## SETH BLODGETT *v.* THE TOWN OF LOWELL.

*Pauper.   Town contract.   Statute of frauds.*

One who, having no property except growing crops not worth more than twenty-five dollars, and no means of support but his labor, sustains a personal injury rendering him helpless for several weeks, is a pauper during such period.

The plaintiff, at whose house such a pauper was left directly after his injury, applied immediately to the overseer of the poor to support him. The overseer sent word, in his official capacity, to the plaintiff, to take good care of the pauper, and that if the latter did not pay him, he, the overseer, would see that he had his pay ; *Held*, that this promise was an original promise, not within the statute of frauds, and was binding upon the town.

BOOK ACCOUNT. The facts are sufficiently stated in the opinion of the court.

The county court, at the December Term, 1859,—POLAND, J., presiding,—rendered judgment for the plaintiff, to which the defendant excepted.

*Child & Benton*, for the defendant.

*Cooper & Bartlett*, for the plaintiff.

ALDIS, J. I. James Guindon was blown up with gunpowder in Lowell on the eve of the 4th of July, and was very badly burned, so as to be helpless for some weeks. He had some crops growing estimated to be worth twenty-five dollars, but which were injured by cattle and frost so as only to be worth seven or eight dollars. He had no other property, and was carried and left at the house of the plaintiff, a very infirm old man, who objected in vain to his being left with him, and who applied immediately to the overseer of the poor of the town of Lowell to support him. The overseer told the plaintiff to take good care of him, and if Guindon did not pay him, he would see that he had his pay, and in making this contract he acted as overseer of the poor. It is said that Guindon was not a pauper, as he had the growing crops to support him. But we think to a person in his situation it would have been against humanity, it would have been a cruel mockery, to have denied him relief from the public treasury, and have bidden him look to such an inconsiderable, uncertain and unavailable source as his little patches of growing crops for the means of support and comfort, and of obtaining nursing and medical aid in his sudden and great misfortune. He was most clearly, in the very words of the statute, " a poor person, who had fallen into distress and stood in need of immediate relief."

II. The plaintiff, by giving notice to the overseer of the poor of Guindon's situation, thereby threw his support upon the town, and if the overseer failed to do his duty in supporting him, the town was liable. It was not necessary for the overseer to agree with the plaintiff to support Guindon in order to make the town chargeable. The statute made the town liable, and solely and primarily liable. The remedy would be by action under the statute and not by action on contract, but the liability by operation of law became absolute and exclusively binding upon the town, as much so as if evidenced by the most explicit contract in writing. It is said that the contract which the overseer of the poor entered into with the plaintiff was merely collateral to the original and primary liability of Guindon to the plaintiff, and so void under the statute of frauds because not in writing.

There can be no question as to the established rule upon this point. Upon whose credit did the plaintiff render the services

for which he here seeks to recover, is the question. If upon the credit of Guindon and the collateral promise of the defendant's overseer, then the plaintiff cannot recover. If any credit was given to Guindon, the defendant's promise should be in writing. But if they were rendered, relying solely upon the defendants' credit, then the liability of the defendant was original, and need not be in writing.

In deciding upon this question, the intention of the parties must govern, and that intention is to be sought by considering the words used in making the promise, the situation of the parties, and all the circumstances surrounding the transaction.

The words used by the overseer ordinarily are held to import a collateral promise. "If he does not pay you, I will see that you have your pay," would ordinarily be understood to imply that the person for whom the debt was incurred was bound to pay it, was originally liable, and that the obligation of the promissor was only collateral. But the peculiar circumstances of this transaction clearly take it out of the general rule, and forbid the idea of any such intention.

1st. The party to whom the services were to be rendered was a pauper, upon whose credit nobody would contract.

2d. The very application to the overseer of the poor stood upon the ground that the plaintiff would not render the services upon the credit of Guindon, but required the support to be furnished by the town. The application itself, without any promise from the overseer, threw the charge of his support on the town, and under the statute, made the defendant absolutely and solely liable for the support of the pauper. It is absurd to suppose that the party having given the notice requisite to make the town liable, and having thus secured its absolute and separate liability would make a contract to have the town assume only a secondary liability.

3d. Nor could the overseer of the poor reasonably suppose that the plaintiff, after having taken proper and legal steps to charge the town, would release it from its absolute obligation, and take only its inferior and collateral guaranty. Neither party could reasonably have understood that such was the intention of the other at the time. The fair meaning of the language and

conduct of the parties taken in connection with all the surrounding circumstances was this, that the plaintiff should furnish the pauper with necessary support, that the town should pay him, and that if the plaintiff could get any pay from Guindon, he should do so, and so far help to relieve the town of their burden.

4th. It is to be observed that there is not the slightest proof of any contract with Guindon for supporting him. So far as the plaintiff had anything to do with Guindon's credit, it was to reject it, to refuse to receive him, and to throw him at once upon the town. This distinguishes this from some of the cases cited by the defendant, where there was a pre-existing indebtedness or liability to which the promise was auxiliary. Such is *Sinclair* v. *Richardson*, in the 12 Vt.

Indeed, when we consider the features of this transaction, the poverty and condition of Guindon, the application to the town, and its fixed statutory liability, and the official action of the overseer, the incongruity of these facts with the theory of a collateral guaranty by the town is apparant. The tests and language of the books to show such collateral liability, as for instance that the town " *comes in aid to procure a credit* " *to be given* to Guindon, seem most inappropriate. The mind rejects at once such an obvious practical misapplication of the general principles of the law of guaranty to facts like these.

It was the duty of the town either to concede at once to the justice of the plaintiff's application, and provide by contract for the support of the pauper, or else to refuse the application because it was not just. The middle ground of a collateral undertaking is not contemplated in the statute, is not within the duties of the overseer's office, and is not to be presumed to have been within the intention of the parties.

We find no error in the judgment of the county court, and it is affirmed.