## TOWN OF DANVILLE v. TOWN OF SHEFFIELD.

*Pauper. Transient Person. Gen. Sts. c. 20, s. 13.*

The overseer of the poor of a town in which a transient person is suddenly taken sick, etc., is bound, under s. 13, c. 20, Gen. Sts., to provide for the support of such person, without regard to such person's ability to defray the expense thereof, if such person be *in need of relief*. The question of the ability of such person to defray the expense of such support arises as between the town rendering the support and the town in which such person is legally settled, *after* the support is rendered.

In the case of a married woman, the question of ability is not confined to her own pecuniary ability, but embraces that of her husband whenever he is liable for the support rendered her. And the fact that she owns a note as her separate property, does not constitute the "sufficient ability" of the statute; for she cannot be sued, and so the note cannot be made available to the town rendering the support.

Although such transient person has property—in this case a note—yet, if that fact is unknown to the town while relief and support are being rendered, it would not constitute an element in determining the question whether relief is needed. And though such fact was known to the town, but the property was not available to such person as a means of present relief, the duty of relief and support would still rest on the town.

ASSUMPSIT under s. 13, c. 20 of the Gen. Sts., to recover the expense of taking care of Aurela Gray, an alleged transient person. Plea, the general issue, and notice of special matter. Trial by jury, December Term, 1876, Caledonia County, Ross, J., presiding.

Aurela Gray was the wife of Reuben Gray, and it was conceded that Reuben Gray had a settlement in Sheffield. The plaintiff introduced evidence tending to show that about October 15, 1872,

Aurela Gray left her husband in Wheelock and came to Danville for the purpose of being attended by a physician with whom she was acquainted, she then being unwell; that she stopped there with her brother, Erasmus Harris; that he took care of her and she was doctored by Dr. Durant until about February 1, 1873; that he then notified the overseer of the poor of Danville, that she was at his house sick, and that the town must take care of her; that thereupon the overseer told him to take care of her at the town's expense, and to continue to employ Dr. Durant as her doctor; that on May 8, 1873, she died, and the plaintiff paid said Harris and the doctor, and that the sum so paid was what was sought to be recovered in this action.

The defendant introduced evidence tending to show that when she left Wheelock she did not intend to return to reside with her husband again, and that she was in Danville with an intention of making her residence there; that at the time she left Wheelock she had $287 in her own right; that a few months before that time she had loaned the money to Sanford Gray, who executed to her or order a note therefor; that the note was at some time, the time not appearing, put into Matthew Harris's hands, and that said Sanford paid a portion of the note to said Matthew on March 8th, and gave a note for the balance payable to said Matthew. There was no evidence in the case tending to show that either Erasmus Harris or the plaintiff's overseer of the poor knew of the money so belonging to her at that time, or that her husband, to whom she had been married less than a year at the time she left Wheelock, ever had anything to do with it. The defendant also introduced evidence tending to show that her husband had sufficient attachable property, so that the plaintiff might have secured its claim for the support of his wife, and so have obtained payment therefor from him.

The plaintiff introduced evidence tending to show that some time before the overseer had notice, Mrs. Gray and her daughter, aged about eighteen or twenty, and Matthew Harris, were together, and that she told him she had given her money to her daughter. The testimony of said Matthew on this point, which was uncontradicted, was to the effect that about December 15th,

at Erasmus Harris's, she told him in presence of her daughter, that she had given her money to her daughter ; that she directed him to keep it and take care of it for her daughter ; that he had done so with the daughter's consent ; and that he still held the money. But he testified nothing about said note, as to whether it was present, or whether Matthew Harris or Mrs. Gray then had it, but it appeared that said Matthew had it the next March. It also appeared that previously to the loan of the money to said Sanford, said Matthew had had the management of it, although Mrs. Gray loaned it to said Sanford.

The defendant requested the court to charge that the money or note held by Matthew Harris was not available to the plaintiff for the purpose of paying for its expenditures in taking care of Mrs. Gray ; and that the gift and transfer of the money in the note in said Matthew's hands vested the money in the daughter, and that it was not available to the plaintiff for its expense in taking care of Mrs. Gray thereafter.

The court did not so charge, but charged as follows :

The question has been argued as though the husband alone, as between the town and this person, was chargeable with her support. It is true that the husband is chargeable with the support of the wife, and if he is of sufficient ability he is bound to support her ; and then the town's remedy is against him, and not against the town of Sheffield, because she is not a pauper, so the town of Sheffield would not be bound to take care of her at all. So, too, if she had sufficient property to take care of herself, maintain herself, at the time, then the town would not be under any obligation to support her. A wife that has $10,000 of her own is not a pauper because her husband is a pauper ; nor is the town obliged to take care of her and support her because the husband happens to be a pauper. So if she was of sufficient ability it would be a sufficient answer that she would not be a pauper chargeable to the town of Sheffield ; and if not chargeable to the town of Sheffield the town of Danville would have no right against the town of Sheffield. As against the town of Danville or the town of Sheffield, and before Mrs. Gray became chargeable as a pauper, she had a right to give this money away. To make a perfected gift, Mrs. Gray must have bona fide made an absolute gift of the note to her daughter, and to have passed the note to her, or to Matthew Harris for her, or if the note was then

in the hands of Matthew Harris, and the gift was *bona fide* and absolute, and he was notified of it by the mother and daughter, and agreed or consented thereafter to hold the note as the property of the daughter, the gift would be valid.

To the refusal to charge as requested, and to the charge as given, the plaintiff excepted.

———— ————, for the plaintiff.

The first question arises on the plaintiff's request to charge the jury. The fact that the transient person is in need of relief imposes the liability on the town, whether the person be sick or poor. Gen. Sts. c. 20, s. 13.

The statute making the town liable for the relief afforded after the notice, the next question is, where is it to seek its remedy in case the party has a settlement in the State? The statute says, if the person be not of sufficient ability to defray the expense of his support, the town may recover it from the town in which such person is legally settled. But it is silent as to the town's remedy in case the party is of sufficient ability. Therefore the town has the common-law remedy under an implied promise of such person to pay the expenses of support. If there had been no question as to the inability of Mrs. Gray to pay, there could be no doubt that Danville might have called on her husband, on the ground that the husband is liable to support his wife. *Bloomfield* v. *French*, 17 Vt. 79; *Woodstock* v. *Hartland*, 21 Vt. 563.

The money held by Mrs. Gray was not available to the plaintiff. A married woman can make no express contract that can be enforced, nor is she liable on an implied contract. Besides, she had given the money to her daughter Ellen.

There was such a delivery of the property donated as divested the donor of all possession and control. *Dean* v. *Dean's Est.* 43 Vt. 338; 2 Kent Com. 438.

The charge upon the matter of the second request was faulty, in not instructing the jury that upon the testimony there was a valid gift, and because the court put the jury to find that the gift from Mrs. Gray must have been *bona fide* and absolute, when there was no testimony tending to show a want of good faith. It

is error to instruct the jury that they may find a material fact where there is no evidence in the case that has a tendency to prove it. ROYCE, J., in *Dean* v. *Davis's Est.* 43 Vt. 338. Besides, the jury were not instructed as to what would constitute good faith. But the question of good faith is not in the case.

The daughter can hold the money upon the facts disclosed in the exceptions.

*O. T. Brown*, for the defendant.

The statute contemplates a pecuniary necessity. No person who has means for providing for himself can be said to be in *need* of relief. Gen. Sts. c. 20, s. 13 ; *St. Johnsbury* v. *Waterford*, 15 Vt. 692 ; *Londonderry* v. *Acton*, 3 Vt. 122.

If Mrs. Gray had applied to the defendant's overseer of the poor for relief, it would not have been his duty to grant it until she had first expended her own property and that of her husband for her support. If she was not a pauper in Sheffield she was not a pauper in Danville.

The opinion of the court was delivered by

BARRETT, J. This case falls within s. 13, c. 20, Gen. Sts. It provides for the support of " any *transient person* suddenly taken sick or lame, or otherwise disabled and confined at any house in any town, and in need of relief." The person, Mrs. Gray, answered literally to this character and condition at the house of Erasmus Harris, in Danville ; and he did what is provided to be done in that section, in order to render it the duty of Danville to provide for her support in relief of himself ; and the town of Danville did what was required by that section in that behalf in order to render Sheffield liable to reimburse the expense incurred by Danville in the support of Mrs. Gray, in case Mrs. Gray was not of sufficient ability to defray the expense of the support rendered her, with the contingent charges. The liability of the town of Sheffield depends on the determination of the question, whether she was of sufficient ability to defray that expense, with said charges. This matter of ability, in the case of a married woman, is not confined to her own pecuniary ability, but embraces

the ability of her husband, whenever he is liable for the support rendered her. In case he should be of sufficient ability to answer to and discharge such liability, in other words, if the expense and charges for the support rendered to his wife under that section of the statute could be collected out of him, it would answer the expression of the statute as to the being " of sufficient ability " of the person upon whom the support and charges had been expended ; and the town rendering the support could not enforce the claim for such support and charges against the town in which the person supported had a legal settlement under the pauper laws.

It may be remarked, that that section of the statute does not make the pecuniary condition of Mrs. Gray an element in the ground upon which the duty of the town rests to furnish support in her case. If physically disabled and confined at any house in any town, and in need of relief, the person is the subject for relief and support under that section of the statute. The overseer of the poor is bound, on the required notice, to provide relief and support, and in default, the town becomes liable to the person at whose house the disabled person is confined and supported. He may look to such town for his pay, whoever may be responsible to such town to reimburse the expense and charges. The matter of the ability of the person helped to make such reimbursement comes into the case, as between the two towns, after the support and relief have been rendered. So, in this case, whether the plaintiff town may recover against the defendant town would, as before said, depend on the sufficient ability, as above explained, of Mrs. Gray or her husband to defray said expense and charges. In addition to what has already been said in the same direction, it is now remarked, that persons of sufficient ability to pay for the relief and support contemplated by the statute, may be in need of that relief and support. This is implied by the very terms and provisions of the statute. Persons of ample ability to pay may fall suddenly sick, or be injured and become helpless, and unable to command their resources, or procure for themselves what may be needed by way of relief and support. The statute designs to have such relief and support furnished in such cases, irrespective of resources and means, leaving them to be looked

after by the town after having done what the statute requires in furnishing needed relief and support.

This view seems not to have been entertained by the court in the charge to the jury, and the view presented was, that, in order to render Mrs. Gray chargeable to Danville, she must have been a pauper in respect to property and ability to pay for needed relief and support, and unless chargeable for that reason to Danville, that town would have no right of claim against Sheffield.

As before intimated, the question, as the case stood upon the evidence, should have been submitted to the jury, whether, out of the property of Mrs. Gray or her husband, the town of Danville, by the means available under the law, could have collected the sum expended on account of Mrs. Gray. Upon the evidence, it is not seen how the note in question could have been reached by the town of Danville in any suit that could have been brought. Mrs. Gray, being a married woman, could not have been sued. The note was treated as her separate property, and subject to her disposal. So it would not constitute the "sufficient ability" of the statute to leave Danville to that as the resource for getting back what it had paid out on her account. As nothing was known in respect to it by Erasmus Harris or the town while the relief and support were being given, it did not constitute an element in determining the question whether she needed relief. If the facts had been known by Harris and the town just as they are shown by the evidence, the duty of rendering relief and support would have rested on the town, because that note was not at that time available by Mrs. Gray as a resource for helping herself to what she needed.

Without being more specific or explicit in remarking on the charge and view upon which the case was submitted to the jury, the view in which this court thinks it should be submitted is sufficiently expressed in what has now been said.

Judgment reversed, and case remanded.