Town of Ripton *v.* Town of Brandon.

May Term, 1907.

Present: Rowell, C. J., Tyler, Munson, and Watson, JJ.

Opinion filed August 10, 1907.

*Paupers—Need of Assistance—Determination by Overseer—Effect—Evidence—Value of Property—Towns—Support of Paupers—Action for Reimbursement.*

In an action by one town against another for expenses incurred in the support of a pauper, it was proper to allow plaintiff to prove by the pauper's son, who was cotenant with him in the ownership of certain real estate incumbered by a mortgage securing a debt fully paid except one note, that it was agreed between themselves that the father should pay the remaining note if he kept the place, and that, if he could not pay it, the witness was to have the property.

The quadrennial appraisal of the taxable real estate in a town, duly executed, verified, and filed according to law, is a public document, and therefore, admissible in evidence on the question of the value of such real estate. *Hubbard* v. *Moore*, 67 Vt. 532, distinguished.

In an action by one town against another for expenses incurred in the support of a pauper, on an issue as to the value of certain real estate owned by the pauper and his son, an offer to prove "by the town clerk" of the town where that real estate was situated, "from the grand lists" of said town for certain years, that the pauper and his son were listed together for real estate there of the value of $190, was properly excluded, as an offer to show the contents of the grand lists by parol.

Whether a person is poor and in need of assistance for himself and family, within the meaning of V. S. 3171 providing for relief in such cases by the overseer of the poor, does not depend alone on the amount and value of his property, but on the exigencies of his then situation.

The determination that a person is poor and in need of assistance, made by the overseer of the poor of the town furnishing such assistance, does not constitute a final adjudication that the cir-

cumstances of the person are such as to entitle him to relief, as against another town where he last lived for three years, supporting himself and family, and which the town that furnished such assistance has sued for reimbursement; but that is a question for the jury to determine under proper instructions. *Holloway v. Barton,* 53 Vt. 300, distinguished.

ASSUMPSIT to recover expenses incurred in the support of a pauper. Plea, the general issue. Trial by jury at the June Term, 1906, Addison County, *Miles,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

It appeared that on February 8, 1905, in plaintiff town, Charles J. Robbins, the alleged pauper, who had last lived for three years supporting himself and family, in defendant town, became so dangerously ill with gall stones that an operation was decided upon by the physicians called to attend him; that the operation was accordingly performed on Feb. 10; that thereupon the overseer of the town of Ripton employed a physician and a trained nurse to attend and care for said Robbins, and also employed one Huntley to furnish him room, board, and other necessaries; that these services and expenses were paid for by plaintiff through its overseer of the poor, which payments are the items relied upon in plaintiff's specifications.

The defendant, among other things, contended that said Robbins was not a pauper at the time in question because he then had available property. As to this, it appeared that on March 16, 1899, said Robbins became the owner of about one and one-half acre of land with a dwelling house and barn thereon; that a few days later he and his wife mortgaged this property to the Brandon Cemetery Association to secure two notes of $50 each, payable on or before one and two years from date, respectively; that on December 8, 1900, he and his wife quitclaimed an undivided half interest in these premises to their son John W., in consideration of $50; that by agreement of all parties this $50 was paid by the son to said Association to apply on one of said notes, which was thereupon cancelled and discharged. Matters remained in that situation up to and during said sickness of said Charles J., all the interest on the remaining note having been paid except about two dollars. For "a considerable time" before said sickness, and thence to the time of

the trial, Charles J. Robbins and his said son, each with his wife and family, resided on said premises.

W. H. Bliss for the defendant.

The quadrennial appraisal should have been admitted. The assessors act judicially and their acts bind the town of which they are sworn officers. The appraisal is an admission of the value by the town. 3 Wig. Ev., §1640; 1 Greenl. Ev., §§484, 493; 9 Enc. of Law, (2nd Ed.) 882-3; Ronkendorff v. Taylor, 4 Peters 349; Evanston v. Green, 99 U. S. 660; Dudley v. Chilton Co., 66 Ala. 593; Pittsfield v. Barnstead, 40 N. H. 477; Grossbeck v. Seeley, 13 Mich. 329; Weatherhead v. Guilford, 62 Vt. 327; Springfield v. Chester, 68 Vt. 294; Bartlett v. Wilson, 59 Vt. 23.

Davis & Russell and J. E. Cushman for the plaintiff.

Valuations made by public officials for purposes of taxation are nowhere admitted, except as containing admissions against owners. In many jurisdictions they are not even admitted for that purpose, because as they were made for a different purpose, they are not criterions of market values, but mere hearsay; and because being made for the sole purpose of assessment and collection of taxes, are not the best evidence. Spink v. Ry. Co., 26 R. I. 115; Kenerson v. Henry, 101 Mass. 152; Flint v. Flint, 6 Allen 34; Anthony v. Ry. Co., 162 Mass. 60; Ridley v. R. R. Co., 124 N. C. 37; Birmingham M. R. Co. v. Smith, 89 Ala. 305; Martin v. R. R. Co., 62 Conn. 331; Storrs v. Robinson, 74 Conn. 443.

It is the valuation made by the party owner, by way of inventory, which afterward becomes a part of the assessors' record, and not the assessors' valuation, that in some jurisdictions has been held admissible as an admission. Hubbard v. Moore, 67 Vt. 532; Manning v. Lowell, 173 Mass. 100; Nufflin Bridge Co. v. Juniata Co., 144 Pa. 365; West Chester et al. v. Chester Co., 182 Pa. 40; Boyer v. St. Louis etc. Co., (Tex.) 76 S. W. 441; Vernon etc. Co. v. Savannah, 95 Ga. 387.

Statutes providing relief for poor persons have always been humanely, liberally, and reasonably construed by this and other

Courts of last resort, as stated in the charge. *Blodgett* v. *Lowell*, 33 Vt. 174; *Wallingford* v. *Southington*, 16 Conn. 435; *Fish* v. *Perkins*, 52 Conn. 200; *Charleston* v. *Groveland*, 15 Gray 15; *Goodale* v. *Lawrence*, 88 N. Y. 513.

WATSON, J. The plaintiff was properly allowed to show by the witness John W. Robbins that, as between him and his father, the alleged poor person, the latter was to pay the remaining note secured by the mortgage on the real estate owned by them as tenants in common, if he (the father) kept the place, and that if he could not pay it the witness was to have the place. The evidence had a bearing on the question of the father's available property.

The value of this real estate was a material question, and one on which witnesses disagreed: those on the part of the plaintiff estimating the value of the entire premises at from one hundred dollars to one hundred fifty dollars, and the alleged pauper's interest therein, from no available value to fifty dollars; while some of the defendant's witnesses valued the place at two hundred dollars, and some at two hundred fifty dollars. On this question defendant called the town clerk of Ripton with the last quadrennial appraisal of the real estate in that town, made in 1902, and offered to show by the witness and the appraisal that therein the premises above mentioned were appraised and listed to Charles J. Robbins and John W. Robbins as owners at one hundred ninety dollars. One question before us is on the exclusion of this evidence on the grounds of plaintiff's objection that the appraisal was made for another purpose, and the appraisers not in court for cross-examination.

The quadrennial appraisal offered is a list of all the taxable real estate in the plaintiff town according to several ownership, with the names of the respective owners when made, and the valuation of the land held by them. It was made by public officers acting under oath of office, enjoined by statute to appraise all the taxable real estate in town at its just value in money, attach to the list thereof a certificate signed by a majority of them verified by oath that they had so done, and return the same to the town clerk, in whose office it was by law required to be kept. This list is a public document. *Clement* v. *Graham*, 78 Vt. 290, 63 Atl. 146. As far as it has reference to real estate owned wholly or in part by the alleged poor person it was per-

tinent to the issue, and accompanied with proof by way of the witness offered therewith that the list came from the proper repository, also of the identity of the property and owners named,—all fairly within the scope of the offer,—the evidence was admissible. Mr. Greenleaf lays down the rule that all documents "of a public nature, are generally admissible in evidence, notwithstanding their authenticity is not confirmed by those usual and ordinary tests of ·truth, the obligation of an oath, and the power of cross-examining the persons, on whose authority the truth of the documents depends. The extraordinary degree of confidence, it has been remarked, which is reposed in such documents, is founded principally upon the circumstance that they have been made by authorized and accredited agents appointed for the purpose; but partly also on the publicity of their subject-matter." Among books falling within this principle of law the author mentions books of assessment of public rates and taxes, the books of the post-office, and custom-house, and registers of other public officers; the registers of births and marriages, made pursuant to the statutes of any of the United States; and the books of record of transactions of towns, city councils, and other municipal bodies. 1 Greenl. Ev. §§483, 484. The same doctrine is laid down in 1 Stark. Ev. part II, §40.

Like questions in principle have been passed upon by this Court in other cases. In *State* v. *Intoxicating Liquors and Claimants*, 44 Vt. 208, assessment rolls made by assessors under the laws of the United States, and entries made by collectors under the same laws of payments made by the claimants of special taxes as retail dealers in spirituous liquors, were held to come fairly within the rule above given from Greenleaf, and properly admitted as evidence tending to show that the claimants had procured the liquors in question for the purpose of retailing them. In *State* v. *Spaulding*, 60 Vt. 228, 14 Atl. 769, the doctrine was again applied, the Court holding that the records in the office of the collector of internal revenue were competent evidence to show that the respondent had obtained a United States license for the sale of liquor, as pertinent evidence on the question of whether he did in fact sell, and also on the question of who was conducting the business. A sworn copy was there admitted. In *McKinstry* v. *Collins*, 74 Vt. 147, 52 Atl. 438, a certified copy of record of the certificate of death made by an attending physician during the last illness of the deceased

was received as evidence of the cause of death. The certificate was filled out, giving among other things required by statute the cause of death, and was properly recorded. It was held that the record of such a certificate was a public record, and that a certified copy thereof was presumptive evidence of such facts stated therein as the attending physician was by law required to certify, and were presumably within his personal knowledge.

*Hubbard* v. *Moore,* 67 Vt. 532, 32 Atl. 465, is relied upon by the plaintiff as an authority to the contrary. Yet the holdings in that case, rightly understood, are in harmony with those in the other cases to which reference has been made. That was a suit in equity by a partner for the dissolution and winding up of the co-partnership and the setting aside of certain conveyances of real estate as in fraud of partnership debts. The other partner and the person to whom the fraudulent conveyances were made were defendants. The defendants contended that the real estate in question was not partnership property. It was held that the grand lists of the town showing that this real estate was set to the firm, in connection with evidence tending to show that the firm paid the taxes thereon, were properly admitted in evidence as bearing on the question whether it was or was not partnership property. It appears from an examination of the master's report in the case that the orator, for the purpose of showing the indebtedness of the firm April 1, 1891, introduced the firm's tax inventory of that year containing a list of the debts in the defendant partner's handwriting; and that in argument counsel for defendants asked the master to consider as evidence the value of the firm's personal property set forth in the inventory, which the master refused to do. It was held that the inventory was properly admitted as an admission by the partner making it of the firm's debts and liabilities. But that to have considered the value of the firm's personal estate would have been error, "for the value was fixed by the listers." It is upon the latter holding that the plaintiff here relies.

When an inventory, sworn to and delivered, is properly filled out in the opinion of the listers, the taxable personal estate contained therein shall be appraised by them at its value in money on the first day of April. V. S. 409, 410. Yet the appraisal so made is subject to voluntary change by the listers until the abstract of individual lists is lodged in the town clerk's office for the inspection of tax-payers. And thereafter it may

be changed by the listers on the hearing of an aggrieved tax-payer, or by the board of civil authority on appeal. When all such hearings are had and decisions made, the grand list is corrected and completed accordingly, sworn to by the listers, and deposited in the town clerk's office. See V. S. 427-433. Since the value of the personal property fixed by the listers in and shown by the inventory in question was not conclusive or binding on either the listers or the tax-payer, it was not an official statement so made under the sanction of an oath of office, or under that of official duty, as to entitle it to that extraordinary degree of confidence necessary to its reception in evidence without confirmation by the obligation of an oath. The inventory in the respect named was not therefore within the rule making public documents evidence, and the statement of value therein by the listers was governed by the common rule regarding hearsay, which in effect was the reason assigned for the holding. See *Ronkendorff* v. *Taylor's Lessee,* 4 Pet. 349, 7 L. ed. 882.

On the same question of the value of the alleged poor person's share in the real estate, "the defendant offered to show by the same witness (town clerk), from the grand list of said Ripton of 1903 and 1904, that said Robbinses were listed together in those years for real estate in Ripton of the listed value of one hundred ninety dollars." The court below may fairly have construed this as an offer to show the contents of those grand lists in the respects specified by the oral testimony of the witness. If so construed, the evidence was properly excluded. Hence error does not appear. Whether the grand lists are admissible in any event for the purpose named in the offer is not considered.

It is urged, however, that since the premises constituted the homestead of the alleged pauper and his wife, he had no available interest therein with which to help himself in such time of need. And hence even though the valuation was all defendant claims, the exclusion of the evidence by the witness and the quadrennial appraisal was harmless. But we are not warranted in so holding. Whether a person is poor and in need of assistance for himself or family within the meaning of the law (V. S. 3171) does not depend alone upon the amount and value of property owned by him. Giving that section of the statute a proper and humane construction, a person may be poor and in

need of assistance for himself or family, even though he have some property, if the property is inaccessible, or otherwise unavailable, and he without credit or friends, so that he can not for the time being in case of emergency suitably supply the necessary wants. This is implied by the terms and provisions of section 3174 for the relief of transient persons suddenly taken sick or lame, etc., and "in need of relief." The town rendering such assistance must first look to the person assisted to defray the expense of his support; but if he is not of sufficient ability to defray such expenses, then a recovery may be had from the town in which he is legally settled. And the same thing is recognized by this Court in *Danville* v. *Sheffield,* 50 Vt. 243. On the other hand, a person without property may have such credit or friends as will reasonably put him beyond the need of public assistance, however sudden, unexpected, or pressing the necessity may be. Clearly, it is a question for the jury to determine in the light of all the circumstances and under proper instructions from the court.

In determining whether a person is poor and in need of assistance, and also as to what is necessary for his relief as a poor person, an overseer must exercise a sound discretion. *Monson* v. *Williams,* 6 Gray 416. And when a town, *bona fide,* so relieves a person apparently a pauper, and actually standing in need of relief, the town in which such person has the statutory residence, if given the required notice, will be liable for the expense, although it may turn out that the person relieved had some property. *Poplin* v. *Hawk,* 8 N. H. 305; *Hardin County* v. *Wright County,* 67 Iowa 127; *Brewer* v. *East Machias,* 27 Me. 489; *Groveland* v. *Medford,* 1 Allen 23.

We cannot however agree with the plaintiff's contention that when the overseer determined to afford assistance and so did, it was a final adjudication that the circumstances of the alleged poor person were such as to entitle him to such relief. Our attention is called to the case of *Holloway* v. *Barton,* 53 Vt. 300, in support of this position. But there the action was based upon an alleged promise of the overseer of Barton to pay the plaintiff for the support of two alleged transient paupers. It was held that in this State the authority of the overseer pertaining to the relief of paupers is not delegated by the town but conferred by law; that the overseer was authorized to determine

whether he would furnish relief to transient paupers and whether the facts made the case a proper one for relief; that if the overseer in answer to a call for relief from a transient person, contracts for the furnishing of such relief, this is an adjudication, final and unassailable, that the person is entitled to relief; that whether the overseer had made the proper inquiries in the premises the person furnishing the relief was under no duty to ascertain; and that the town could not repudiate his contracts made in matters coming within the purview of his official duty. But there is no ground for saying that a town with which the overseer, thus furnishing relief, has no relation, is bound by his acts. In cases arising against another town to recover the expense of the relief so furnished, the acts and doings of the overseer are subject to the revision of courts, *Moultonboro* v. *Tuftonboro,* 43 N. H. 316.

Several other exceptions were saved and argued, but being of such a nature that any decision rendered thereon would be of no aid in another trial of the case, they are not considered.

*Judgment reversed and cause remanded.*