CITY OF BATH *vs.* INHABITANTS OF HARPSWELL.

Sagadahoc.   Opinion April 5, 1913.

*Assumpsit.   Board of Distribution.   Christian Burial.   Overseers of Poor.*
*Pauper.   Settlement.   Revised Statutes, Chapter 17, Section 3.*
*Revised Statutes, Chapter 27, Section 17.*

1. That R. S., Chap. 17, Sec. 3, as to the disposal of dead bodies required to be buried at public expense, should be construed in connection with R. S., Chap. 27, Sec. 37, which authorizes and directs overseers of the poor to relieve persons destitute found in their towns and having no settlement therein, and to decently bury them, or dispose of their bodies according to R. S., Chap. 17, Sec. 3.
2. That the overseers of the city of Bath had authority in this case either to give the body a Christian burial, or to deliver it to the Board of Distribution, if no member of the family had claimed it.

3. That they were acting within the scope of their authority in preparing the body for burial and the expenses so incurred were properly chargeable against the defendant town.

On report.  Judgment for plaintiff for $36.

This is an action of assumpsit to recover the sum of thirty-six dollars, the price of a casket and robe furnished and for services rendered in preparing for burial the body of Rose Alexander, whose pauper settlement was in the defendant town.  The pauper fell into distress in the city of Bath and was sent to the city hospital where she died.  The overseers of the poor of the city of Bath directed the undertaker to prepare the body for burial, which was done, and then appeared the husband and the body was surrendered to him for burial.  Plea, general issue with brief statement as follows:

That it is not liable for the undertaker's bill in preparing the body of this pauper for burial, because said body was disposed of in accordance with Section 3 of Chapter 17 of the Revised Statutes of Maine.  The case was reported upon an agreed statement of facts to the Law Court, with the agreement that the court shall render such judgment as the statement of facts will warrant.  If judgment is rendered for the plaintiff, it shall be in the sum of thirty-six dollars.

The case is stated in the opinion.

*Frank L. Staples,* for plaintiff.

*Emory G. Wilson,* for defendants.

SITTING:  WHITEHOUSE, C. J., SAVAGE, CORNISH, KING, BIRD, HANSON, JJ.

CORNISH, J.  This action was brought to recover thirty-six dollars, the price of a casket and robe furnished and services rendered by an undertaker in preparing the body of Rose Alexander for burial.  From the agreed statement, on which the case comes to the Law Court, the following facts appear:

"Rose Alexander, wife of John Alexander, who then had his pauper settlement in Harpswell, fell into distress in Bath, on November 15, 1911, and was sent to the city hospital by the overseers of the poor of Bath.  She died at the hospital November 18,

1911, and her body, in accordance with a rule of the institution, was removed from the hospital that night, by a local undertaker, upon the order of the overseers of the poor of Bath.

"On the following morning, the chairman of the overseers of the poor of Bath directed the undertaker to prepare the body for burial, and also directed him not to exceed $25 for a casket and $5 for a robe. At this time the chairman did not know what disposition would finally be made of the body.

"A little later in the day the husband appeared, claimed the body for burial, and by the verbal order of the chairman of the overseers of the poor of Bath the body was surrendered to him for interment. Nothing was said as to who should bear the expense previously authorized. The husband directed the undertaker to prepare the body for shipment by train, which the undertaker did, and at the husband's direction placed it on the train bound for Brunswick. Upon its arrival at Brunswick, the husband took charge of the body and had it conveyed to the place of interment.

"No claim for reimbursement for the expense incurred in the preparation of the body for shipment by rail, or the subsequent expense of interment, is made by the plaintiff."

The question presented in this case involves the construction of R. S., Chap. 17, Sec. 3, which reads as follows:

"Sec. 3. All public officers, agents and servants of any and every county, city, town and other municipality, and of any and every almshouse, prison, morgue, hospital or any other public institution having charge or control over dead human bodies required to be buried at the public expense, are hereby required to notify immediately the said board of distribution, or such person or persons as may from time to time be designated by said board, or its duly authorized officer or agent, whenever any such body or bodies come into his or their possession, charge or control, and shall, without fee or reward, deliver such body or bodies to said board, or its duly authorized officer or agent, and permit and suffer the said board or its agents, or the physicians and surgeons from time to time designated by it or them, who comply with the provisions of this chapter, to take and remove any and all such bodies to be used within the state for the advancement of medical education; but no such notice

need be given and no such body shall be delivered, if any person, satisfying the authorities in charge of said body that he or she is a member of the family of or next of kin to the deceased, shall claim the body for burial, but it shall be surrendered to him or her for interment, and no notice shall be given and no body delivered to said board or its agents, if such deceased person was a traveler and not a vagabond, who died suddenly, in which case the said body shall be buried."

The contention of the defendants is that under this section, the overseers of the poor of Bath had authority neither to bury the body of the pauper, nor to prepare it for burial, and therefore could incur no expense in such preparation, which would be legally chargeable to the defendants; that said Section 3 is mandatory and compels such officers either to notify the State board of distribution, created by Section 2 of the same chapter, that a body was ready for delivery, or to surrender the body to some member of the family of or to the next of kin to the deceased.

If this contention is upheld, the Legislature has taken away from the public officials the humane right to decently bury deceased paupers at public expense, and has made pauperism a disgrace instead of a misfortune.

It cannot be that the defendants' contention is correct, and in our opinion it is not, as a careful examination of all the statutes pertaining to the subject renders certain, and in making such examination we must consider the other statutory provisions relating to the care of paupers by overseers of the poor. In other words, R. S., Chap. 17, must be construed along with Chapter 27. They are not stray enactments passed in disregard of each other, but each is to be construed in the light of the other.

Considered historically, the situation is this:

Under R. S., 1883, Chap. 24, Sec. 35, it was provided that "overseers shall relieve persons destitute, found in their towns and having no settlement therein, and in case of death, decently bury them or dispose of their bodies according to Section 3 of Chapter 13." This latter section provided that unclaimed bodies should be subject to the use of the Medical School of Maine for anatomical purposes. At that time, overseers clearly had the right to either inter deceased

paupers or to deliver the bodies to the Maine Medical School, as they might decide. They could exercise the option.

In 1897, by Chap. 315 of the Public Laws, the Legislature passed an act, entitled "An act for the promotion of medical education and the prevention of unauthorized uses of and traffic in dead human bodies," which repealed seven of the nine sections of Chap. 13 of the R. S. of 1883, including Sec. 3, above referred to, and substituted other sections in their place, which with the two unrepealed sections of Chap. 13, have become Chap. 17 of the Revision of 1903, the chapter under discussion.

Sec. 2 of this act of 1897, prescribed in substance that the board of distribution, and also the family of the deceased, be notified by public officials of deaths occurring in almshouses, prisons, hospitals and other public institutions having control and charge of dead human bodies, and if the body was not claimed for burial, it should be delivered over to the board, but if claimed "it shall be surrendered to him or her for interment or buried at public expense." The right to bury at public expense was expressly reserved.

In 1901, by Chap. 276 of the Public Laws, this section was in terms amended in only one particular, namely, by inserting after the words "dead human bodies" in the fourth line the words "required to be buried at public expense;" but in reciting and re-enacting the entire section as amended, the words giving the officials the right to bury at public expense were omitted from the clause above quoted, so that it was left, "it shall be surrendered to him or her for interment." Whether this omission was by mistake, or design, it is impossible to determine; but in any event there was no amendment in the pauper law (Chap 24, Sec. 35), and under that section, overseers still retained the power and authority either to decently bury or to dispose of the bodies according to Section 3 of Chap. 13.

In the last revision, Sec. 3 of Chap. 315 of 1897, as amended by Chap. 276 of 1901, became the present R. S., Chap. 17, Sec. 3; and Sec. 35 of Chap. 24 of R. S., 1883, became the present R. S., Chap. 27, Sec. 37. This last section reads: "Overseers shall relieve persons destitute, found in their towns and having no settlement therein, and in case of death, decently bury them or dispose of their bodies according to Sec. 3 of Chap. 17."

It is clear, therefore, that overseers still have the authority either to bury such bodies, or, if the situation warrants, to deliver them to the board of distribution. Thus construing Chap. 17, in the light of Chap. 27, a reasonable and humane result is reached.

Applying this construction to the case at bar, it follows that the overseers of Bath acted within the scope of their authority, in preparing the body of Mrs. Alexander for burial, and that if it had not been claimed, they could have given it a Christian burial at the expense of the defendants. After it was prepared, the body was claimed by the husband, who himself performed the last offices. The expense, however, preliminary thereto, was properly incurred by the city of Bath, and legally chargeable against the defendants in this action.

The defendants raise the additional objection that having paid on January 11, 1912, the charge for medical services and hospital treatment which were rendered to the pauper after statutory notice given by the plaintiff to the defendants, they are not liable in this action for the undertaker's bill without receiving a new notice therefor before action brought. Such is not the rule in this State. The notice given is sufficient to authorize recovery for a period of time beginning three months before the date of the notice and ending at the date of the writ, the suit having been commenced within two years after the cause of action accrued. R. S., Chap. 27, Sec. 37. *Veazie* v. *Howland*, 53 Maine, 38; *Fayette* v. *Livermore*, 62 Maine, 229; *Rockport* v. *Searsmont*, 103 Maine, 495. The fact that a bill for a portion of the expenses was first presented and paid, and then another bill for the balance, does not change the rule, so long as no suit was brought prior to the pending one. The cases cited by the defendants are not in point.

*Judgment for plaintiff for $36.*