Town of Cabot *v.* Town of St. Johnsbury.

May Term, 1920.

Present:    Watson, C. J., Powers, Taylor, Miles, and Slack, JJ.

Opinion filed October 5, 1920.

*Paupers—Notice Under G. L. 4220—New Notice Not Required for More Than Sixty Days' Assistance—Residence of Husband Determines That of Family—Liability of Town Depends On Its Obligation to Support—Person With Means of Supporting Self Not a Pauper—Town Not Liable for Support Furnished Married Woman if Husband Has Means —Father Bound to Support Minor Children—Remedy Against Husband Under G. L. 4230—Transient Person.*

1.    Where a mother applied to the overseer of a town for assistance for herself and two small children the mother was the poor

person in need of assistance, and not the children, and the assistance was furnished to her for herself and the children as her family.

2. A record, stating that plaintiff town gave the "following written notice," as required by G. L. 4220, to the respective towns of Lyndon and St. Johnsbury, "and the only difference is that one was a notice to the town of Lyndon, and the other a notice to the town of St. Johnsbury," and then giving the Lyndon notice *verbatim*, construed to mean that where "Lyndon" appears in the Lyndon notice, "St. Johnsbury" appears in the St. Johnsbury notice.

3. Where a town, notified by another town, under G. L. 4220, absolutely neglects to provide for such poor person or family, the notice covers the whole period, within statutory limitations, of the relief furnished, and a new notice is not required for a recovery for assistance furnished for more than sixty days.

4. The legal residence of a husband for the purpose of support under the pauper law determines that of the members of his family.

5. Liability of the town of a person's statutory residence for relief furnished him by another town under the pauper law depends not merely upon the fact that such relief was furnished, but likewise upon its obligation to do it.

6. No person can be chargeable to a town as a pauper while he has the means of supporting himself.

7. Where a husband, liable for the support of his wife, is of sufficient ability to answer to and discharge the liability to a town for support furnished her under the pauper law, such town cannot enforce the claim therefor against the town in which she had a legal residence under the pauper law.

8. A father, being of sufficient ability, is legally bound to support his minor children.

9. A person who has property immediately available for his support is not a pauper, and has no claim on public charity; the obligations of towns under the pauper law being limited to those who are unable to help themselves.

10. If a husband of sufficient ability to support and maintain his wife, by his neglect or default, suffers her to become chargeable as a pauper, the remedy of the town seeking to recover for support furnished her is not against the town of her legal residence, but against her husband under G. L. 4230.

11.  A person who goes to a town to reside and while there comes to
     want, etc., is not a "transient person" within the meaning of
     G. L. 4222.

ACTION OF CONTRACT under G. L. 4219, to recover money ex-
pended in the support of a pauper. Plea, the general issue.
Heard by the Court on an agreed statement of facts at the Sep-
tember Term, 1919, Washington County, *Butler*, J., presiding.
Judgment for the defendant. The plaintiff excepted. The
opinion states the case.

*J. Ward Carver* and *H. William Scott* for the plaintiff.

*Searles & Graves* for the defendant.

WATSON, C. J.    The agreed statement of facts shows that on
January 20, 1915, Annie M. Gilman (the widow of one Gilman
by whom she had two children, yet minors) was married to Frank
L. Taylor of St. Johnsbury. At the time of this marriage Mrs.
Gilman was keeping a boarding house at Lyndon. On the day
named, Frank L. Taylor's residence under the pauper law was in
the town of St. Johnsbury, where he had last resided for the
space of three years, supporting himself. On and after the day
named, he resided at Lyndon, hitherto living there, occupying
the same house in which he went to reside at the time of his
marriage. Two children have been born of this wedlock: Hattie
Alice Taylor, born on November 11, 1915, and Fidora A. Taylor,
born on February 18, 1917.

[1]    On August 13, 1917, Mrs. Taylor took her four chil-
dren and went to the town of Cabot to reside with Charles Gil-
man, father of her former husband, and while there, owing to her
feeble condition of health, she came to want and was in need of
support and assistance; and on November 13, 1917, she made
application to the overseer of the poor of that town for assistance
for herself and Taylor children. Those two children were then
small babies, the older one being but two days more than two
years old. They were not poor persons in need of assistance in
plaintiff town. The mother was the poor person there in need of
assistance, and the assistance for which recovery is sought in this
action, was furnished to her for herself and those two children
as her family. *Danville* v. *Hartford,* 73 Vt. 300, 50 Atl. 1082.

She did not then have money or other property with which fully to support herself and these two children.

The record states: "That on December 10, 1917, the overseer of the poor of the town of Cabot gave the following written notice, as required by section 4220 of the General Laws, to the respective overseers of the poor of the towns of Lyndon and St. Johnsbury, and the only difference is that one was a notice to the town of Lyndon, and the other a notice to the town of St. Johnsbury. The Lyndon notice is in the words and figures following:" A copy of that notice then follows.

[2]    It is urged in defence that the notice to the town of St. Johnsbury was insufficient, because the notice set forth in the record says "that their last-known residence in this State for the space of three years supporting themselves, was in the town of Lyndon," etc. It is argued that this in itself should be sufficient to dispose of the case; and that under such a notice the town of St. Johnsbury was not called upon to act, and cannot be liable for the relief furnished. But we do not think such is the fair and intended meaning of the record. It states that the overseer of the poor of the plaintiff town gave the following written notice, "as required by section 4220 of the General Laws," to the respective overseers of the poor of the two towns, the only difference being "that one was a notice to the town of Lyndon and the other a notice to the town of St. Johnsbury." Were the record interpreted as urged by the defendant, it does not show in each instance "notice, as required by" the section of the statute named, and it would not be "a notice to the town of St. Johnsbury," as distinguished from "a notice to the town of Lyndon." Clearly, the fair and intended meaning is that claimed by the plaintiff: where "Lyndon" appears in the Lyndon notice, "St. Johnsbury" appears in the St. Johnsbury notice.

[3]    It is further urged that under the provisions of the statute, in order to permit a recovery for a period of more than sixty days, additional notices are required, and that none were given, making reference to *Barnet* v. *Norton*, 90 Vt. 544, 99 Atl. 238, as showing an approval of such construction by this Court. But that case says nothing looking with approval in either direction. It simply says in effect that requirement of successive notices seems to have been conceded at the trial; but that however this may be, the introduction of one notice does not prevent

the introduction of others if given and relied upon by the plaintiff, so far as the exigencies of his case require.

The purpose of the statute is to require notice of a condition that renders it necessary for the town to provide assistance for the alleged pauper and to give the overseer of the town sought to be charged reasonable time, before action can be brought, in which to inquire respecting the circumstances, condition, and residence of the person claimed to be without means of support, and to determine whether he will, for his town, assume the burden of such person. *Randolph* v. *Roxbury*, 70 Vt. 175, 40 Atl. 49; *Granville* v. *Hancock*, 69 Vt. 205, 37 Atl. 294. We need not consider the requirement of the statute as to a new notice where the town notified complies with the notice by paying for the support furnished, by removing the pauper, or by otherwise providing for his relief; for in the case at bar, the town to which notice was given did not comply therewith in any manner, nor to any extent, whatsoever. In such circumstances, no inconvenience can result to the town notified, from extending the effect of the notice to cover the whole period, within statutory limitations, of the relief furnished, and we are of the opinion that no new notice was required. *Attleboro* v. *Mansfield*, 15 Pick. (Mass.) 19; *Topsfield* v. *Middletown*, 8 Met. (Mass.) 564; *Bath* v. *Harpswell*, 110 Me. 391, 86 Atl. 318.

[4]   Mr. Taylor had not resided in Lyndon three years on December 10, 1917, the day on which the overseer of the poor of plaintiff town gave the notice to the overseer of the poor of defendant town, as stated above.   Consequently, on the latter date his residence for the purpose of support under the pauper law, was in the latter town; and since the legal residence of the husband determines that of the members of his family, the residence of his wife and children also was in that town. *Mount Holly* v. *Peru*, 72 Vt. 68, 47 Atl. 103; *Essex* v. *Jericho*, 76 Vt. 104, 56 Atl. 493.

It is urged that neither Mr. Taylor nor his wife was a poor person in need of relief and support, within the meaning of the pauper statute; for, by the agreed facts, he was earning, during the time covered by plaintiff's specifications, about thirty dollars each week, and, if he desired, could have supported his wife and children, but did not, except to pay her four dollars each week up to January, 1918. The record further shows that the hus-

band's earning capacity and ability to care for his family were not known to the plaintiff's overseer of the poor.

[5-7]    Want of such knowledge by the overseer of the poor is not very material in determining whether Mrs. Taylor with her Taylor children, was, in contemplation of the statute, at the time she was furnished the relief and support in question, a poor and indigent person in need of relief.    Liability of the town of her statutory residence for the relief furnished depended not merely upon the fact that such relief was furnished, but likewise upon its own obligation to do it.    *Ludlow* v. *Weathersfield,* 18 Vt. 39.    And it has been emphatically laid down by this Court that no person can be chargeable to a town, while he has the means of supporting himself.    *Randolph* v. *Braintree,* 10 Vt. 436; *Ludlow* v. *Weathersfield,* cited above; *Danville* v. *Wheelock,* 47 Vt. 57.    The matter of liability, in the case of a married woman, in addition to her own pecuniary ability, embraces the ability of her husband whenever he is liable for the support rendered her; and in case he is of sufficient ability to answer to and discharge such liability, the town rendering the support cannot enforce the claim therefor against the town in which the person supported had a legal residence under the pauper law.    *Danville* v. *Sheffield,* 50 Vt. 243; *Chelsea* v. *Brookfield,* 27 Vt. 587; *Ripton* v. *Brandon,* 80 Vt. 234, 67 Atl. 541.    Not only this, but the statute has been for more than half a century that if a married man of sufficient ability to support and maintain his wife, by his neglect or default suffers her to become chargeable as a pauper upon a town, such town may recover the expense incurred by it in her support in an action as prescribed by the statute, against the husband, the recovery being limited in time covered by the expense as therein specified.    G. L. 4230.

[8]    And being of sufficient ability, the husband was also legally bound to support his minor children.    *Rowell* v. *Vershire,* 62 Vt. 405, 19 Atl. 990, 8 L. R. A. 708; S. C. 63 Vt. 510, 22 Atl. 604.

Indeed, a delinquent husband may be compelled to support his dependent wife and minor children.    G. L. 3536-3542; *In re Turner,* 92 Vt. 210, 102 Atl. 943.

[9]    Our attention is called to the holding in *Ripton* v. *Brandon,* 80 Vt. 234, 67 Atl. 541, that when a town, *bona fide,* relieves a person apparently a pauper, and actually standing in need of relief, the town of such person's statutory residence, if

given the required notice, will be liable for the expense, even though it turns out that the person relieved had some property. There is no doubt as to the soundness of this proposition. It was applied by this Court in *Blodgett* v. *Lowell*, 33 Vt. 174, and in *Springfield* v. *Chester*, 68 Vt. 294, 35 Atl. 322, and other cases; but it is applicable only when, in the circumstances, what property such person has is not available for his immediate relief, or is manifestly disproportionate to his needs. 21 R. C. L. 704, § 5; *Coffeen* v. *Preble*, 142 Wis. 183, 125 N. W. 954, 20 Ann. Cas. 753, 27 L. R. A. (N. S.) 1079; *Albany* v. *McNamara*, 117 N. Y. 168, 22 N. E. 931, 6 L. R. A. 212. But a person who has property immediately available for his support is not a pauper, and has no claims on public charity. The obligation of towns under the pauper law is limited to those who are unable to help themselves. 21 R. C. L. 704, § 5; *State* v. *Osawkee Township*, 14 Kan. 418, 19 A. R. 99.

It is said in argument that earning capacity is not property, and especially so when it is dependent on the desire of one who had promised to support, but failed in so doing, except to the extent of four dollars each week for a sickly wife and two babies. Any failure by the husband to fulfill promised support is outside the record—not within the agreed facts by which we are governed. It has been said in a recent case that a person without property may have such credit or friends as reasonably to put him beyond the need of public assistance, however sudden, unexpected, or pressing the necessity may be; and that it is a question of fact to be determined in the light of the circumstances. *Ripton* v. *Brandon*, 80 Vt. 234, 67 Atl. 541. And in a Massachusetts case, it was held that where the alleged pauper (a person of small mental capacity) was shown to possess good health and strength and was capable of doing many kinds of work on a farm, and of earning by his labor more than enough to support himself when he had employment, he could not be considered a pauper. *Wilson* v. *Brooks*, 14 Pick. (Mass.) 341.

[10]    The question in the case at bar is not, however, whether the husband had property, but it is whether he was of sufficient ability to answer to and discharge the liability to the plaintiff town for the relief and support furnished. This clearly appears from the holdings in *Danville* v. *Sheffield* and in *Chelsea* v. *Brookfield*, both cited above. If he was of sufficient ability to support and maintain his wife, and by his neglect or default

suffered her to become chargeable as a pauper in plaintiff town, as the agreed facts seem to show, the remedy of the town was not against the town of her legal residence, but against her husband under the provisions of section 4230 of the General Laws, already noticed.   See *Goodale* v. *Lawrence,* 88 N. Y. 513, 42 A. R. 259.

[11]   It is further argued that, when assisted, Mrs. Taylor was a transient person with her children in the plaintiff town, within the meaning of the statute, and therefore the case should be determined according to the law applicable where such person has been furnished with relief.   But the agreed facts refute this position; for they state that she took her children "and went to the town of Cabot to reside," and while there came to want, etc. The phrase "transient person" in the pauper law has been discussed many times, and its declared meaning is too well understood to require further discussion.   We therefore content ourselves by referring to, and following, the rulings made in previous cases.   Under the former pauper system, it was held that poor persons who became chargeable and were relieved by a town wherein they had no legal settlement, were either persons "coming to reside," or "transient persons."   And that the word "transient" was not to be taken literally, but as contradistinguished from and including all but those who had "come to reside."   *Middlebury* v. *Waltham,* 6 Vt. 200; *Danville* v. *Putney,* 6 Vt. 512; *Bristol* v. *Rutland,* 10 Vt. 574; *Jamaica* v. *Townshend,* 19 Vt. 267.   This distinction under the former statute, definitely settled by a long line of decisions, is held to exist under the present pauper statute, the provision regarding transient paupers being essentially the same.   *New Haven* v. *Middlebury,* 63 Vt. 399, 21 Atl. 608.   In this New Haven case it is said to be well settled that a person who had taken up his residence in the town when he became in need of relief, was not included in that class of paupers; that the law governing that class applies only to a person who "is suddenly taken sick or lame, or is otherwise disabled and confined at any house, in any town, or is committed to jail and is in need of relief, away from the town in which he resided, * * * But if the person had come to reside in the town when he needed relief, this section [of the statute] was not applicable." The Court further said: "The word 'transient' is the opposite of 'resident.'   The latter describes a person at rest in a town, while the former describes him in his passage through or across it."   And in *Danville* v. *Hartford,* 73 Vt. 300, 50 Atl. 1082, the

Court said: "It appearing that when the mother removed from the defendant town with the pauper she went to the plaintiff town to reside, she was not a transient person in the plaintiff town." In view of the settled law in this respect, it is quite clear that Mrs. Taylor was not a transient person in the plaintiff town when she received the assistance in question.

*Judgment affirmed.*