## H. S. Peabody *v.* Town of Holland.

February Term, 1935.

Present: Powers, C. J., Moulton, Thompson, and Sherburne, JJ., and Buttles, Supr. J.

Opinion filed May 7, 1935.

*E. A. Cook* and *Searles & Graves* for the defendant.

*Raymond L. Miles* for the plaintiff.

POWERS, C. J. The plaintiff, a practicing physician and surgeon, seeks to recover by this action of contract, for professional services rendered to Joseph Archambault, an alleged poor person in need of such assistance. The complaint is in the form of general assumpsit, and the answer is a general denial. The trial below was by court in the Orleans municipal court. Upon facts found and filed, judgment was rendered for the plaintiff, and the defendant excepted.

It is found that Archambault, who had lived with his wife in the defendant town for about two years, on July 28, 1931, while at work for George Musgrove, at Holland, fell from a load of hay, and suffered a fracture of the sixth and seventh cervical vertebrae. The plaintiff was called, found the injured man in a desperate condition, and removed him in an ambulance to the hospital at Newport. Before he left with the patient, the plaintiff inquired of the Archambaults if they could pay for the injured man's treatment and they replied that they could not. Some reference was made to his government insurance policy and adjusted compensation certificate. The plaintiff tried to get into communication with the overseer of the poor of the defendant town, but as the latter was not at home, a telephone

240

message was left with his wife. The plaintiff was anxious to get his patient to the hospital and left it to Musgrove to call the overseer. As a result of Musgrove's call, the overseer called during the evening at Musgrove's house and learned about the accident. He made no promise, then or thereafter, to pay the expenses of Archambault's accident. The charges on the books of the plaintiff were made to Archambault.

It is expressly found that "the Archambaults had no resources which were readily available for use at the time of the accident, and were poor persons in need of assistance."

This finding is excepted to on the ground that it is unwarranted, because the uncontradicted evidence showed that Archambault, who was an ex-service man, had a "bonus" from the government of $1,551, on which he had borrowed $125, and on which he could borrow one-half of the balance, and because he had a government insurance policy for $10,000, payable to his wife, on which he could have obtained a loan. The evidence tended to show that it took about thirteen months to obtain the $125 loan, but that a loan on the policy might be obtained in about a week.

 However these sources of credit ultimately affect Archambault's standing under our poor laws, he was at the time the doctor arrived, *prima facie*, a poor person in need of assistance. He had no money or tangible property, and no resources available at that time or soon enough to do any good in his desperate situation. In such circumstances, one who, *bona fide*, renders services to another, apparently a pauper and actually standing in need of relief, may, if in other respects his case is made out, recover therefor from the town chargeable under the principle of *Town of Ripton* v. *Town of Brandon*, 80 Vt. 234, 241, 67 Atl. 541. It is insisted by the defendant that a person who has any property must exhaust it in his own support before he can successfully apply for public aid. It was formerly so held in this State. But as was pointed out by Judge Haselton in *Town of Waitsfield* v. *Town of Craftsbury*, 87 Vt. 406, 410, 89 Atl. 466, Ann. Cas. 1916C, 387, those decisions were under statutes quite different from those now in force. P. L. 3923, under which this action is brought, makes it the duty of the overseer to whom application is made to relieve a poor person if in need of assistance. The term "assistance" implies that the needy person may be able to bear some of the expense

of his own support. To "assist" is to *lend aid to; to help.*
Neither this language nor the spirit of modern poor laws require
that the applicant shall be utterly worthless so far as property
goes. Then, too, the statute above referred to, in making pro-
vision for a recovery from the town of the applicant's three
years residence, says of him, "and is not of sufficient ability to
provide such assistance;" as we recently said of a similar ex-
pression found in P. L. 3926, the possibility that the poor person
may have been possessed of means of his own "is clearly recog-
nized." *Catlin* v. *Town of Georgia,* 103 Vt. 97, 99, 152 Atl.
89, 90. The citation of our early cases (above referred to) in
*Town of Cabot* v. *Town of St. Johnsbury,* 94 Vt. 311, 318, 111
Atl. 454, was unfortunate, as the rigor of their doctrine has cer-
tainly been relaxed. The present statutes, read in the light of
modern concepts of poor relief obligations, require no such
narrow and illiberal constructions. Indeed, the case last re-
ferred to recognizes and reaffirms the more humane rule that one
may be "poor and in need of assistance," though he has some
property. *Blodgett* v. *Town of Lowell,* 33 Vt. 174; *Springfield*
v. *Town of Chester,* 68 Vt. 294, 297, 35 Atl. 322; *Town of Ripton*
v. *Town of Brandon,* 80 Vt. 234, 241, 67 Atl. 541; *Town of Hard-
wick* v. *Town of Barnard,* 102 Vt. 330, 333, 148 Atl. 408.
Whether he is entitled to public assistance depends upon a
variety of circumstances, such as the amount of his property, if
any, its availability, his ability to borrow, the existence and
ability of his kinsfolk, and the exigencies of his situation. It is
usually for the jury to determine, in the light of all the circum-
stances, and under proper instruction from the court. *Town of
Ripton* v. *Town of Brandon, supra; Town of Lyme* v. *Town of
East Haddam,* 14 Conn. 394; *Inhabitants of Templeton* v. *In-
habitants of Winchendon,* 138 Mass. 109, 110; *Town of Plymouth*
v. *Town of Haverill,* 69 N. H. 400, 46 Atl. 460, 461.

▮ Remember this man's situation: He had a broken neck;
he was paralyzed from his neck down, urgency of action was im-
perative; his life was at stake. There was no time to apply for
or obtain a loan from the government. It cannot be said as
matter of law that this unfortunate man was not then and there
a poor person in need of assistance within the meaning of the
statute. Whether his sources of revenue can be made available
by either party hereto is a question we need not consider, nor

need we consider any question of an express contract, since no question of such an engagement is made.

 Since the enactment of No. 55, Acts of 1892, an application for relief is required by law. It matters not who makes the application. *Town of Waitsfield* v. *Town of Craftsbury*, 87 Vt. 406, 408, 89 Atl. 466, Ann. Cas. 1915C, 387; *Town of Barnet* v. *Town of Norton*, 90 Vt. 544, 547, 99 Atl. 238; *Town of Hardwick* v. *Town of Barnard*, 102 Vt. 330, 334, 148 Atl. 408. While the law is "solicitous" that poor persons shall be supplied with needed assistance, *Town of Waitsfield* v. *Town of Craftsbury*, *supra*, and that such assistance shall be rendered promptly, see *St. Albans Hospital* v. *City of St. Albans*, 107 Vt. 59, 176 Atl. 302, it is not so solicitous that it requires an overseer to investigate or act under P. L. 3923, until he receives from some source or other what amounts to an application for aid to a poor person in need of relief. Then, he must act. *Town of Weston* v. *Town of Wallingford*, 52 Vt. 630. No formal application is specified by the act referred to. None is required. It need not be in writing or specially phrased. It is enough, if what is said and done is intended as a request for public aid and so understood by the overseer of the poor to whom it is communicated. So here, if the plaintiff or Musgrove, either by way of the telephone messages to Mrs. Flynn, the wife of the overseer of the defendant town, or at the interview which Musgrove had with Flynn the evening of the accident, conveyed to the latter the information of Archambault's necessitous situation in such a way that he understood that an appeal for aid was made to him as overseer of the town, it was enough to satisfy this requirement of the statute.

 That it was the plaintiff's intention to make the town chargeable for his services is plain enough. The only object he could have had in attempting to establish communication with Flynn was to accomplish this. But did he satisfy the other requirement of the rule as above stated? Did he make it so plain to him that he understood or ought to have understood that an application for public aid was being made? We think he did not. The message that the plaintiff himself gave Mrs. Flynn was nothing that Flynn need give attention to, for the most that is shown by the record is that the plaintiff asked her to tell her husband to call him. The most that appears from the record of the interview between Musgrove and Flynn is that

the latter was told about the accident and that the Archambaults might need help. More than this was required to make an application. Indeed, there is no finding that an application was made. The finding is that the overseer gained knowledge ''that the Archambaults needed assistance and that the doctor looked to the town of Holland for his pay.'' This was not enough. The judgment was unwarranted without an affirmative finding that such an application was made, and on the evidence the finding should have been that it was not.

The plaintiff argues that an emergency existed, and it is so found. But that fact did not affect the liability of the defendant town. The rights of the plaintiff are to be determined by the express terms of the statute. There is no such thing as a common-law liability in these pauper matters, and ''where the statute imposes no liability there is none, and that is the end of it.'' *Town of Morristown* v. *Town of Hardwick*, 81 Vt. 31, 33, 69 Atl. 152. While as we have seen the emergency referred to had some effect upon Archambault's standing under P. L. 3923, it gave rise to no right of action against the defendant.

*Judgment reversed, and cause remanded.*