### Destitute of Bennington County
### by their agents, R. S. Van Santvoord

### C. H. Bryant, J. W. Browne
### v.
### Henry W. Putnam Memorial Hospital

[215 A. 2d 134]

June Term, 1965

Present: Shangraw, Barney, Smith, Keyser, J.J. and O'Brien, Supr. J.

Opinion Filed October 5, 1965

*Black & Plante* for plaintiffs.

*Clifton Parker* for defendant.

**Keyser, J.** This action for a declaratory judgment is brought in equity by the plaintiffs acting as the agents of the destitute of Bennington County under an appointment of the governor by authority of 14 V.S.A. §2401. The plaintiffs seek a declaration of the rights of said destitute under a deed of gift or trust, to the Village of Bennington from one Henry W. Putnam and the Bennington Water Company and under the statute which chartered the defendant hospital.

The plaintiffs also seek to have the defendant required to make reasonable rules and regulations relative to the admission and treatment of the destitute. And they further pray that a permanent injunction be issued restraining the defendant from charging or attempting to charge anyone or any municipal corporation for any charges for said destitute.

Decree below was in favor of the plaintiffs. The injunction prayed for was issued. The defendant has appealed from the decree and judgment order.

On December 10, 1912, Henry W. Putnam, the principal stockholder of the Bennington Water Company, joined by said water company, conveyed and donated to the Village of Bennington, its system of water works. It was the desire of the said Henry W. Putnam, as expressed in the deed, of donating the water system to the village "for

the beneficial use of said Village and the inhabitants thereof, and others who may now or hereafter be supplied from said system and that from the income derived therefrom a Public Hospital be established and maintained in said Village."

Paragraph VIII of said deed of gift provides as follows:

"VIII. The net income as above defined from said system of Water Works shall be paid over each year semi-annually on the 31st day of March and 30th day of September by the said Village Treasurer to the Henry W. Putnam Memorial Hospital, a corporation chartered and to be organized under the laws of the State of Vermont, for the purpose of receiving and holding said net income from year to year and with the same, and such sums as it may from time to time receive by gift, bequest, charges for treatment or otherwise, to build, establish, equip, and forever maintain, control, govern, and operate a public hospital, into which hospital all persons requiring treatment residing in the Village or Town of Bennington or other Towns in Bennington County, or residing elsewhere, if the hospital is of sufficient capacity, are to be admitted and receive treatment at reasonable charges and the destitute free of charge under such reasonable rules and regulations as may be adopted by said Hospital Corporation for the government, management and operation of said Hospital. . . ."

The Henry W. Putnam Memorial Hospital was chartered by legislative act, No. 401 of the Acts of 1912. Section 2 of the act reads as follows:

"Section 2. The object and purpose of this corporation is and it is hereby empowered to receive from year to year from the Treasurer of the Village of Bennington and hold the net income of the system of Water Works conveyed or to be conveyed to the Village of Bennington by the Bennington Water Company, a corporation located in said Village, and with the same and the accumulations thereof, if any there be and such other sums as it may from time to time receive from the income of said system or by gift, bequest, charges for treatment, or otherwise, to build, establish, equip and forever maintain and operate a public hospital which, for all time it is to manage, control and govern and into which all persons requiring hospital treatment residing in the Village or Town of Bennington and other towns in Bennington County, or residing elsewhere if the hospital is of sufficient capacity, are to be admitted and receive treatment at reasonable charges, and the destitute free of charge, under such reasonable rules and regulations as may be

adopted by said hospital corporation for the government, management and operation of the said hospital."

The Henry W. Putnam Memorial Hospital was established in the Village of Bennington in 1918 and has been in continuous operation since that time. The net income from the water system has been paid to the hospital by the Village and used for the construction, management and operation of the hospital. The hospital has received additional gifts and donations which have been made a part of the assets of the hospital.

Since the establishment of the hospital until recently, the hospital has never charged the towns for indigent patients. In June 1959, it gave notice to the several town officials in Bennington County that "Effective immediately, the towns will be advised of the admission of indigent patients, the hospital bills for such patients will be presented to the town involved at regular rates. Such towns will be required to pay 50 per cent of the total bill rendered." "On October 30, 1961, the hospital administrator again notified the towns of Bennington County that effective January 1, 1962, the towns would be required to pay "the full cost of the ward rate to the hospital."

Defendant first excepts to Paragraph 2 of the decree which reads:

"2. The defendant corporation, its agents, attorneys, officers and servants, are hereby strictly restrained and enjoined from refusing or denying admittance into its hospital of any person, free of charge, residing in any Town in Bennington County, who requires hospital treatment and *who is destitute or indigent,* as long as the hospital is of sufficient capacity and financial ability to provide for the same." (Emphasis added).

The defendant argues that the chancellor erred in predicating its decree on the determination and premise that every indigent person is a destitute person entitled to hospital care by the defendant free of charge without regard to the intent of the donor, and without evidence or findings of any such intent. On the contrary, the petitioners claim the above provisions are valid.

The trust deed expressed two fundamental and primary purposes for its execution to the Village of Bennington, (1) to donate the system of water works for the beneficial use of the village and its inhabitants, and (2) from the income derived therefrom and other available funds to establish, maintain and equip a public hospital in said village.

The deed clearly demonstrates by its language that it was the prime motive and intent of the donor to establish a public hospital and there-

by make available the facilities for hospital treatment, first, for all residents residing in the Village or County of Bennington and, secondly, for other persons not such residents, if the hospital is of sufficient capacity. The deed specifies that *all such persons* "are to be admitted and received treatment at reasonable charges, and the destitute free of charge, under such reasonable rules and regulations as may be adopted by said Hospital Corporation for the government, management and operation of said Hospital."

A trust deed takes effect when it is made and the construction that would be given to it at that time holds true throughout the life of the instrument. 90 C.J.S. §161 p. 16, (a) ; *Fiduciary Trust Co.* v. *Brown* 152 Me. 360, 131 A.2d 191.

The trust instrument must be construed to give effect to the grantor's intent as manifested by the language used, and if words are unambigous there is no necessity for judicial interpretation. *State* v. *Banker's Trust Co.,* 105 Vt. 220, 164 A. 377. See also *Porter* v. *Bank of Rutland,* 19 Vt. 410; 14 C.J.S. Charities, §11 p. 437.

The controlling fact in the interpretation of trusts is the expressed intent of the settlor as disclosed by the language of the trust instrument. *Title Guarantee & Trust Co.* v. *Bedford,* 125 Conn. 349, 5 A.2d 852, 122 A.L.R. 654. And words in a deed of trust are to be accorded their usual and generally accepted meaning in the absence of a clear intention to the contrary. *Schellentrager* v. *Tradesmeus National Bank & Trust Co.,* 370 Pa. 501, 88 A.2d 773.

The court may not aribitrarily attempt, under the guise of construction, to make a new trust agreement for the parties, and may not read into the trust instrument a provision contrary to the settlor's wishes, or provisions which do not expressly appear or which do not arise from the plain meaning of the words used. Ibid, 90 C.J.S. Trusts §161, at p. 17. See *Avery* v. *Bender,* 119 Vt. 313, 126 A.2d 99.

The court has included in its decree indigent persons (paupers) as well as "the destitute" residing in the County of Bennington as being entitled to free care by the defendant hospital.

There is no question that "the destitute" are named as a beneficiary under the trust and "are to be admitted and receive treatment . . . free of charge."

Destitute is not possessing the necessaries of life and in a condition of extreme want. *St. John* v. *State,* 22 Ala. App. 115, 113 So. 321, 323; *Polk County* v. *Owen,* 187 Iowa 220, 174 N.W. 99, 107. Webster's Third International Dictionary defines destitute as bereft or lacking possessions and resources.

■ Indigent, in a general sense, ordinarily indicates one who lacks property or means of a comfortable subsistence, and for that reason is needy or in want. 42 C.J.S. p. 1363. Webster's Third International Dictionary defines indigent as poor, without being destitute.

Under P. S. 3665, the statute in effect in 1912, an overseer was required to have the care "of poor and indigent persons" residing or found therein, and a "poor person in need of assistance" was, and still is, an indigent person or pauper. P. S. 3667; *Town of Randolph* v. *Montgomery*, 109 Vt. 130, 194 A. 481; *Town of Waitsfield* v. *Town of Craftsbury*, 87 Vt. 406, 89 A. 466.

"The term 'assistance' implies that the needy person may be able to bear some of the expense of his own support. To 'assist' is to lend aid to; to help. Neither this language nor the spirit of modern poor laws require that the applicant shall be utterly worthless so far as property goes." *Peabody* v. *Town of Holland*, 107 Vt. 237, 240, 241, 178 A. 888, 889, 98 A.L.R. 866. See also *Town of Cabot* v. *Town of St. Johnsbury*, 94 Vt. 311, 317, 111 A. 454.

Whether a person "is entitled to public assistance depends upon a variety of circumstances, such as the amount of his property, if any, its availability, his ability to borrow, the existence and ability of his kinsfolk, and the exigencies of his situation." *Peabody* v. *Town of Holland*, supra.

■ The donor limited the class of patients who are to receive the bounty of his generosity by treatment free of charge solely to "the destitute". It is most significant that Mr. Putnam did not mention in the deed of gift that "poor and indigent persons" or "paupers", either as individuals, or as a class, were to receive free care. No word of qualification designating a class broad enough to include the indigent, the needy or the merely poor was used by the settlor.

If Mr. Putnam had had the intention of assisting poor and needy persons by free hospital care and thus lift this financial burden from the towns and its taxpayers in Bennington County, or elsewhere, it would have been only the natural and reasonable thing for him to have said so by clear, affirmative and precise language in the trust deed. The importance of such an intent required it. The apparent intent of the donor was to furnish free hospital care only to those persons whose financial situation is such that hospital care is not otherwise obtainable because there is no other available means, or agency, to provide them with such care.

The plaintiffs attach some significance to the fact that the hospital is required under its charter provisions to show in its annual report to the Governor and Trustees of the Village of Bennington the number of patients received during the year "distinguishing indigent from paying patients." This fact is of no great importance. The reporting provision is no part of the deed by which Mr. Putnam established the trust and may not be read into it to construe, or give definition to, the word "destitute." This provision fails to demonstrate to us that Mr. Putnam had in mind and meant that the indigent, or paupers, were embraced and to be included within the meaning of the destitute to the extent claimed by the plaintiffs and established by the decree.

It is explicit from both the deed and charter that the sole object and purpose of the defendant corporation was to receive the net income derived from the operation of the water works and with other sources of revenue to build, equip and maintain a hospital principally for the benefit of all persons residing in Bennington County. The provision that destitute persons were to be admitted free of charge is only incidental to the primary object to be accomplished.

"A bequest in trust for the poor inhabitants of a particular place, parish or town is a charitable trust for the poor not receiving parochial or municipal aid or relief as paupers on the ground that the charity is for the poor, and not for the rich, and on the ground that if it was applied to the maintenance of those supported by the parish, town or county it would relieve wealthy taxpayers from their taxes and not materially aid the poor." Perry on Trusts, 7th Ed., §698.

In *Fiske, et al* v. *Paine, Executor, et al,* 18 R.I. 632, 633, 28 A. 1026, 29 A. 498, the Court stated:

"A gift to the poor does not necessarily mean a gift to paupers. There are many poor people worthy of aid who are not a charge upon the town. It does not follow, therefore, that the administration of the trust will reduce taxation for the support of the poor. Indeed, bequests of this kind have been construed not to apply to persons receiving public aid for the reason that if so applied they would simply ease taxes and so benefit the property owners rather than the poor."

The injunction, paragraph 2 of the decree, which in effect adds that any indigent person, without restriction except as to residence, shall be furnished free hospital care in the hospital is without basis in the deed, charter, evidence or findings of fact.

■ The court found by Finding 15 that it was the intention of the defendant hospital to charge public agencies for the treating of the indigent and destitute of Bennington County. The hospital did give notice in writing to the officials of the several towns that charges for indigent patients residing in such towns admitted to the hospital but there is no evidence that it was the intention of the hospital to charge public agencies for the care of the destitute within the intent of the deed. The word "charge", contrary to plaintiffs' claim, does not include within its definition or meaning voluntary "aid", or "payments" made to the hospital under a social welfare program, or granted by a public or charitable agency.

The defendant contends that the court erroneously has assumed control to the exclusion of the trustee over the trust by the designation of beneficiaries from the class intended by the donor.

Paragraph 3 of the decree reads:

"3. The said defendant hospital corporation shall have the right and duty to make reasonable rules and regulations relative to the admission to its hospital of the indigent or destitute of Bennington County. However, such rules and regulations shall not be of such a nature as to provide payment for the admission or care of any indigent or destitute person of Bennington County by any Federal, State, County, Town or City agency which would otherwise be required by law to pay for hospital care and treatment for the destitute or indigent of Bennington County, as long as the hospital shall be of sufficient capacity, and financial ability. Said defendant hospital corporation does have sufficient capacity and financial ability as of this time."

Perry on Trusts, 7th Ed., Section 731, says:

"If a testator makes a bequest for a charitable use in the most general and indefinite terms, and appoints Trustees to exercise their discretion in selecting the objects and in reducing the general intent to a particular and practical application, and such trustees fail for any reason, without having exercised their discretion or power of appointment in reducing the general and indefinite charity to a practical certainty of administration, courts will be governed by the intention of the donor, in determining whether they will appoint other trustees to exercise the power given to the first trustees named . . ."

Directing or empowering the trustee to distribute the funds is usually tantamount to vesting him with power of selection, in the absence of

limiting language; this is based upon the principle that when an act is authorized to be done by a trustee or agent, every authority requisite to doing the act is, by intendment of law, comprised in the grant of power. 15 Am. Jur. 2nd Charities, §98, p. 103.

█ And in Restatement, Trusts 2d, sec. 382, it is said that where discretion is conferred upon the trustee of a charitable trust with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse of discretion. See also 14 C.J.S. Charities §49, p. 509, notes 12, 13; *Sandusky v. Sandusky*, 265 Mo. 219, 177 S.W. 390; *Commonwealth ex rel. Marshall v. Beeman*, 299 Ky. 26, 184 S.W. 2d 117, 119.

█ "Where the general purpose of a charity is defined by the instrument creating it, the selection of the particular beneficiaries may be left to the discretion of the trustee appointed by the donor." 15 Am. Jur. 2d, Charities, §32, p. 39, note 8. And "where an instrument creating a charitable trust fails to designate the method by which the individuals who are to receive the benefit of the charity are to be select, the trustee appointed by the instrument, if given full power to manage the trust, may choose the beneficiaries . . . ." Ibid at pp. 39, 40.

In *Clement v. Hyde*, 50 Vt. 716, 28 Am. Rep. 522, the income from a trust fund was "to be expended in the education of the scholars of poor people in the County of Orange." The Court said at p. 720, 721: "The beneficiaries of most gifts to a charitable use are of necessity more or less indefinite; especially is this the case where the benefits of the bequest are to be extended over a large period of time, and to be conferred upon a class of individuals, who are to be the poor of a parish, or the students of a school, during a number of years, no human being can foretell."

This court in that case recognized the right of selection and discretionary powers in the trustee when it said: "If the trustee had applied the income arising from the trust fund in good faith and in the exercise of ordinary discretion in the purchase of books, payment of tuition, or board of any of the class of scholars indicated, no one, we think, would doubt about this accomplishing the intention of the testator."

It requires no argument to demonstrate that "the destitute" cannot be stereotyped. Who are such persons requires the study and consideration by the trustees of all pertinent facts and circumstances surrounding each individual and the application of honest, sound judg-

ment and discretion based upon such information and the reasonable rules and regulations adopted by the hospital. Such discretion is to be tempered by the intent of the testator. There is no finding by the court which suggests that the trustee at any time has abused its discretion.

A trustee in making a determination where discretion is conferred has an important responsibility, which, if honestly exercised, calls for no revision by the court. *Dumaine* v. *Dumaine*, 301 Mass. 214, 223, 16 N.E. 2d 625, 118 A.L.R. 834; *In re Small's Estate*, 244 Iowa 1209, 58 N.W. 2d 477, 492.

A person may be destitute, or indigent, and yet have friends or relatives who are not only able but willing to furnish such person with proper medical, nursing and treatment outside the hospital. Also a person may be entitled to benefits under a particular social welfare program which grants aid for hospital care. Or such person may have hospitalization insurance or some other protection against all or part of the cost of hospital treatment. Progression in the field of social welfare has been extensive over the past several years. The recent medicare, hospitalization and anti-poverty programs enacted by Congress portrays a continuing trend in this field. All of this will have its effect in varying degrees on persons who might otherwise be determined either as destitute or poor and indigent.

In 1912, the date of the deed which controls here, there were no such social welfare programs as exist today, or that may be instituted in the future. The donor could not possibly have had such circumstances in mind or anticipated them and thus have intended to exclude from the trust the benefit of payments under such programs, or agencies thereunder. Clearly the conditions under which persons are determined to be desitute, or even poor and indigent, is not stagnant but is ever changing and shifting. In this situation the donor must have intended that the power of selection and the right to exercise discretion in this respect was to rest with the trustee.

Furthermore, the deed and charter provide that "all persons requiring treatment . . . . are to be admitted . . . . under such reasonable rules and regulations as may be adopted by said Hospital Corporation for the government, management and operation of said Hospital." These are not empty words. This language expresses a clear intent by the donor to vest the trustee with discretionary powers in the selection and admission of the individuals who are to be benefited from the designated class. The discretion of the trustee is not limited; neither is the right to decide who is a destitute person vested in town officers or any other person.

In *Dillaway* v. *Burton*, 256 Mass. 568, 153 N.E. 13, 19, the Court held that "within the limits of the language used, the plaintiff, in determining the recipients of the charity, is entitled to exercise some discretion in the discharge of the duties imposed upon it."

As was said in *Bancroft* v. *Maine Sanatorium Ass'n.*, 119 Me. 56, 109 A.L.R. 585: "It was legally competent for the donor to give this latitude to the trustee, and, in the absence of bad faith, fraud, or mere arbitrary action on their part, it is the duty of the court to accept their conclusions as final, and thus give effect to the wishes of the creator of the trust."

By devising a scheme for carrying the trust provisions into effect which relate to the destitute, as provided by the rules and regulations adopted by the hospital (trustee), and by exercising its discretion in enforcing the object of the trust, will the intention of the donor be carried out. *Porcher* v. *Cappelmann*, 187 S.C. 491, 198 S.E. 8, 9.

The practical result of the restriction in the decree is to make a pauper out of a person because of receiving, or being eligible to receive, a grant-in-aid for hospital care under any of the present and growing social welfare programs. From this arises and is created an artificial destitution — a person not in fact wholly destitute, or even a pauper, but made so by the decree and thus charge the hospital with his entire care therein to the benefit of the towns and taxpayers therein. This materially alters the primary purpose of the trust to provide a hospital wherein care is to be available to both paying patients of the county, and elsewhere, and to those less fortunate persons unable to pay the cost of their care according to their degree of destitution.

It must be borne in mind that this is not a case where a charitable trust is established solely for the benefit of the destitute. It may well be that under present and future economic conditions, social welfare programs, or other benefits, few, if any, persons residing in Bennington County, or elsewhere, could be considered destitute. A person may be poor and needy under the pauper laws and yet not be destitute within the intention of the donor, Mr. Putnam.

A court is without power to modify the primary end which the testator seeks to attain but will go a long way in an effort to carry it out. *Cassidy* v. *Murray*, 144 Me. 326, 68 A.2d 390.

Moreover, the injunction makes it mandatory that the hospital admit free of charge paupers in the county who are transient persons,

an imprisoned pauper, or the pauperized wife or family who have been deserted by the head of the family or those who required specialized hospital treatment such as persons afflicted with tuberculosis or alcoholism, or the insane. The injunction also prevents reimbursement to the hospital for out-patients care. Certainly, all this was never intended by Mr. Putnam.

The language used in the deed of gift, or the charter, does not support the conclusion that it was within the spirit and intendment of the deed of trust to establish a hospital and a trust to furnish free hospital care indiscriminately to all "poor and indigent" persons or settled or nonsettled paupers, either as a class or individually, residing in the county, or elsewhere, who require hospital treatment. The language fails to show any intention by Mr. Putnam to cast upon the hospital the absolute duty to admit every poor and indigent person indiscriminately free of charge to the towns and to impress this entire financial burden on the trust. The trust must be available for the maintenance and improvement of the hospital so that it can carry out the main objective of the trust and provide hospital treatment for all persons and not to the destitute on a priority basis.

It is the duty of the trustee to preserve the assets of the trust so that the purposes of the trust will endure and not be jeopardized. The trust is not primarily to protect the towns and the destitute. There is no expressed or explicit intention to relieve the towns or the taxpayers in the county of their burden for support of the poor and indigent residing therein. The indirect result would be to help the towns but it is not the primary purpose and the donor did not so provide. The decree erroneously produces this result.

The court by construction is attempting by its decree to impose restrictions upon the trust and read into it a provision which from language of the trust deed, or the charter, are not evident, or intended by the donor. This it may not do. *State* v. *Banker's Trust Co.*, supra; 90 C.J.S. Trusts, §161, p. 17, note 85; *Healy* v. *Loomis Institute*, 102 Conn. 410, 128 A. 774.

█ Upon the facts established the court should not interfere in the internal management of the defendant hospital or attempt to control the discretion of the trustee in such management. The hospital as trustee not only has the duty but the authority to determine the individuals to be benefited from the class designated by the donor (and the legislative act) under reasonable and nondiscriminatory rules and regulations adopted for its government, management and operation.

We find no evidence to support the prohibition in the decree against the hospital receiving "payment for the admission or care of any indigent or destitute person of Bennington County by any Federal, State, County, Town or City agency which would otherwise be required by law to pay for hospital care and treatment for the destitute or indigent of Bennington County." It is an arbitrary provision in both paragraphs 3 and 4 of the decree and is untenable on the record presented and the law applicable thereto.

The defendant further urges that the rules and regulation which it as trustee has adopted as authorized by the donor are reasonable.

The chancellor decreed:

"4 The present rules and regulations of the defendant hospital corporation are declared to violate the provisions of the Trust here involved as well as the Statute (No. 401-1912), insofar as they require payment by the public agencies herein referred to or charitable agencies, for admission, care and treatment of the destitute or indigent of Bennington County."

In the view we have taken in our discussion of the case, it is apparent that this declaration in the decree is error. Moreover, the evidence and findings do not support it.

There is no finding that any of the rules and regulations adopted by the defendant hospital are unreasonable. Lacking such a finding, there is no basis for this court to consider the reasonableness, or lack of it, of such rules and regulations.

Defendant's final exception relates to paragraph one of the decree which reads as follows:

"The defendant corporation shall annually report to the Governor of the State of Vermont, and to the Trustees of the Village of Bennington. Such report shall show the number of patients received into said institution during the preceding year. Such report shall also distinguish the indigent from the paying patients; the nature of their several diseases; the length of their respective residences in the hospital; the result of their treatment; the nature and value of the property of the corporation; its resources and pecuniary condition; together with all such other particulars as may be necessary to show the condition and operation of the hospital, and the manner in which its funds are vested and used."

Except as to the date of making the annual reports, this order of the court is merely repetitious of what appears in Section 7 of No., 401,

Acts of 1912, the act of incorporation of the defendant hospital. The Court has introduced into its decree a requirement which the hospital has been under the duty to perform by the foregoing statute since it has been in operation. The deed of gift, however, contains no requirement for the making of reports by the hospital of its operations.

Moreover, the statute requires that the annual report shall be made by the hospital to the Governor and to the Trustees of the Village of Bennington.

The plaintiff agents were appointed by the Governor under authority of 14 V.S.A. § 2401 to represent the beneficiaries of the trust. This statute may be resorted to when a trust is made to or for the benefit of a class or classes of beneficiaries in this state whose members are not all ascertained or definitely ascertainable. The statute authorizes the agents to "act for them and their interests, without expense to the state, in any litigation, contest, or compromise in relation to such devise, legacy, gift, trust, will, contract or instrument by which the same is given."

The powers granted to the agents do not embrace any rights, or grant a cause of action, respecting the non-compliance by the hospital of the reporting provision, section 7, of the act of incorporation. Their powers extend only to any litigation, contest, or compromise in the ascertainment of uncertain beneficiaries under trust.

There is no evidence or finding that the destitute have been prejudiced by any of the annual reports made by the hospital. However, this is immaterial in this proceeding.

The court improperly and without jurisdiction in this proceeding included the foregoing order incorporated in paragraph one of its decree.

The above disposes of the questions raised on appeal. From our discussion, it is evident that the decree must be reversed and a new decree drawn, stating the duties of the hospital toward the class of persons intended to be included by the donor in the designation "destitute," as determined and defined herein.

DECREE IS REVERSED AND CAUSE REMANDED. LET A NEW DECREE BE DRAWN AND ENTERED IN ACCORDANCE WITH THE VIEWS EXPRESSED IN THE OPINION. MOTION FOR REARGUMENT DENIED. LET FULL ENTRY GO DOWN.

Holden, C. J. did not sit.