**John A. RAND, Executor of the Estate of Ormsby MacKnight Mitchel, Deceased, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 909, Docket 71–1169.**

United States Court of Appeals, Second Circuit.

Argued June 24, 1971.

Decided July 22, 1971.

Reid & Riege, P. C., Hartford, Conn. (William R. Judy and Sherin V. Reynolds, Hartford, Conn., on the brief), for appellee.

Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Paul M. Ginsburg, Michael L. Paup, Attys., Tax Div., Dept. of Justice, Washington, D. C. (Stewart H. Jones, U. S. Atty., of counsel), for appellant.

Before SMITH and HAYS, Circuit Judges, and POLLACK, District Judge.*

---

* Of the Southern District of New York, sitting by designation.

1. P.L. 91–172, 83 Stat. 487. The statute sets out stringent standards for estate tax charitable deductions for decedents dying after December 31, 1969 with estate plans established after October 9, 1969. However, the Tax Reform Act permits a deduction for charitable remainder interests under pre-Tax Reform rules for estates of decedents whose wills were executed before October 9, 1969, if the decedent dies prior to October 9, 1972. This series of litigations will undoubtedly affect many estates.

---

POLLACK, District Judge:

This litigation is one of a series brought by the United States to limit the availability of estate tax charitable deductions for estates not governed by the Tax Reform Act of 1969.[1] Plaintiff is the executor of the estate of Ormsby MacKnight Mitchel who died in 1964. In his Will the decedent created a trust which provided that the principal should go to various charities after the end of a life estate. The Revenue Service denied a deduction for the present value of the charitable remainder on the ground that the interest is not presently ascertainable and hence is not severable from the noncharitable interest. The estate paid the deficiency and sued for a refund which was awarded to it by the Court below (Clarie, D. J.). For the reasons appearing hereafter, we reverse and dismiss the complaint.

The decedent was a partner in a stock brokerage firm and owned a seat on the New York Stock Exchange used by the firm. He planned to leave the bulk of his estate to several charities. However, he did not wish to cause his partners financial hardship at the time of his death by forcing them to purchase the seat from the estate. As a result, Mitchel left the value of 20% of the seat to two of his partners absolutely. He also bequeathed, in trust, for the life of Henry M. Watts, Jr., his partner, an amount of money equal to 80% of the amount due to the estate in liquidation of the testator's seat capital account in the brokerage firm. Watts was named the trustee of the trust as well as its income beneficiary. The remainder of the trust was given to designated charities.

The trust gave the "entire gross or net income" to the trustee income beneficiary. The trustee was given extreme-

ly broad powers to manage and reinvest the principal at his sole discretion in any type of investments, including the power to invest in partnership interests in any brokerage or other firm and in real property, "all without regard to any law concerning the investment of trust funds." The trustee was also given power to charge all operating and maintenance expenses against trust corpus. He was authorized to loan any part or the whole of the trust estate, as trustee, to anyone, including to himself as an individual, for any purpose whatsoever, upon any terms, in his sole discretion. In addition, the Will excused the trustee from the duty to render to any court annual or other periodic accounts whether or not provided by law and directed that any allocation of expenses in relation to the settlement or approval of the accounts made by the trustee was to be binding upon all persons interested.

The District Court found that under the law of Vermont, where the decedent was domiciled at the time of his death, the broad administrative powers did not permit the trustee to deal otherwise than impartially between the life tenant and the remaindermen/charities. Moreover, the District Court pointed to Vermont statutory law which serves in its judgment, to render the value of the remainder interest ascertainable. The statutes referred to are those requiring a bond for faithful performance of trust duties; separation of trust from individual property; annual accountings; probate court examination of trustee under oath; and general equity control over the trustee by the probate court.

On those grounds, the District Judge concluded that any power that the trustee here may have to invade corpus is subject to an ascertainable standard, i. e., that provided by said law. Therefore, the District Court found that the value of the charitable remainder was presently ascertainable and deductible for federal estate tax purposes. The Court below also found that factual evidence reinforced the conclusion that the possibility the charitable remaindermen might not take was so remote as to be negligible. 26 C.F.R. § 20.2055–2(b).

The Internal Revenue Code permits as a deduction from the value of the gross estate the amount of all bequests to charitable and religious organizations. 26 U.S.C. § 2055(a)(2). Regulations promulgated thereunder permit the deduction to be taken only insofar as the interest is presently ascertainable and hence severable from the noncharitable interest. 26 C.F.R. 20.2055–2(a). The Supreme Court has said of these provisions:

> Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. * * * Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. Merchants Nat'l Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 261, 64 S.Ct. 108, 111, 88 L.Ed. 35 (1943).

The taxpayer seeks to distinguish prior cases denying estate tax charitable deductions on the ground that those decisions involved provisions permitting an invasion of trust corpus on terms not readily ascertainable and predictable, while here there are no direct powers of invasion of principal to the detriment of the charitable remaindermen. However, any of several powers given the trustee make ascertainment of the remainder too indefinite to allow the requisite deduction.

The trustee (who is also the life beneficiary) has the right to enjoy the "entire gross or net income" of the trust. This in effect permits trust expenses to be charged against principal. The stock

exchange seat has definite expenses attached to its use which can be charged to principal. But more importantly, the trustee has the right to sell the seat and invest in something else, including real property. As the Government points out, this permits the trustee to invest in income producing property involving high management expenses. Taking the extreme illustration of an apartment house, for instance, valued at $100,000, as the substituted corpus of the trust, the Government suggests that this might produce gross rental income of $500,000 and involve maintenance expenses of $490,000. The $10,000 net annual profit would represent a good return on the original investment, but if gross income ($500,000) were allocated to the income beneficiary while all expenses ($490,-000) were charged against corpus, it would not take long to deplete completely the entire remainder interest.

The taxpayer said in oral argument that in such an instance the remaindermen would not stand idly by while such a gross depletion of the remainder could occur. However, he could point to no Vermont decision so limiting the life tenant. If anything, Vermont Courts would permit the trustee to do what the express language of the instrument permits:

> A trust deed takes effect when it is made and the construction that would be given to it at that time holds true throughout the life of the instrument.
> * * *
>
> The trust instrument must be construed to give effect to the grantor's intent as manifested by the language used. Destitute of Bennington County by Van Santvoord v. Henry W. Putnam Memorial Hospital, 125 Vt. 289, 293, 215 A.2d 134, 137 (1965).

Similarly, in Tuttle v. Tuttle, 112 Vt. 271, 278, 23 A.2d 523, 526 (1942), the Vermont Supreme Court stated as a rule of Will construction that

> Force and effect must be given to every part of the will, if possible, since it is not to be presumed that the testator used an unnecessary word, or one to which no proper force can be given.

The crucial issue here is not whether the trustee would do something so severe as the above example; rather the question is simply whether the trustee has a number of powers so broad that at the time of the decedent's death we cannot ascertain with any reasonable degree of probability the value of the remainder.

The powers to lend and to borrow, standing alone, would alone serve to destroy the charitable deduction of the remainder under this Will. The trustee was given express powers to borrow:

> I specifically direct that he have the power hereunder to borrow as trustee upon the security of the trust estate, and to loan any part or the whole of the trust estate, as trustee, including such loan or loans to himself as an individual, for any purpose whatsoever, upon any terms, in his sole discretion.

While we are told that the trustee is not only a forthright and honest man, but also quite wealthy in his own right, there is nothing in the instrument giving adequate protection to the remaindermen such that we can be sure that they will receive a share ascertainable at the time of decedent's death. The stock market has seen rapid changes in the values of securities over the past few years. A number of stock brokerage firms have gone out of business or else merged, sometimes with serious impairment of the original capital. If the trustee lends the corpus to himself or his firm only to see the firm go out of business, it is conceivable that there will be little or nothing left for the remaindermen. There is no assurance that the trustee's own estate would not be judgment proof, in whole or in part, which would prevent the remaindermen from ever receiving their shares at the end of the trustee's life estate.

In addition, the general management powers are so broad that the trustee could invest in wasting assets, permitting the relatively high income to go to

the life beneficiary, with little or no remainder left for the charities. The Government does not contend that the total of the charitable remainder will be consumed in allocations against the value thereof but that a steady attrition can be envisaged and consequently the value of the remainder is not presently ascertainable.

The only case decided in Vermont Courts to which our attention has been called in which any broad management provision was involved in St. Germain's Adm'r v. Tuttle, 114 Vt. 263, 44 A.2d 137 (1945). That case is hardly apposite here. In that case the settlor of an *inter vivos* trust, an aged widow unable to handle her own affairs, gave the trustee the power "to invest and reinvest the trust estate in such securities as the Grantee may, in his discretion, see fit, without being limited to the class of securities in which trustees are authorized by law to invest funds." *Id.* at 266, 44 A.2d at 140. The trustee then invested in preferred stock of a failing corporation he was connected with and was held liable for the bad investment. In addition, in *St. Germain* the trustee not only invested in a type of security normally forbidden to trustees (because there was a close corporation involved) but the investment at all times was extremely risky. There is nothing in Vermont law to indicate that effect would not be given to the broad language here. See In re Robinson's Will, 101 Vt. 464, 467, 144 A. 457, 458 (1929); III Scott on Trusts § 233.5 (3d ed. 1967).

The taxpayer's position that even if there is a power to invade corpus here, the chances that such an invasion would occur are so remote as to be negligible, must also fail. The regulations provide that "[i]f an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act * * * the oc-currence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable." 26 C.F.R. § 20.2055–2(b). However, this exception applies only to contingencies that are subject to mathematical, actuarial computation and here the taxpayer's position is supported only by factual evidence relating to the business reputation of the trustee and his long-time friendship with the decedent. See Henslee v. Union Planters Nat'l. Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949). To hold otherwise would require the Revenue Service to litigate the characters of executors and trustees and their relationships with decedents to determine the true likelihood of the occurrence of events so that the proper tax could be calculated. The process of tax collections is complicated enough now.

The taxpayer argues that the estate plan was created in its present form to give the utmost flexibility to the trustee during his life estate so that the decedent's former business partners and firm would suffer a minimum of financial disruption. This is certainly fine, but the estate cannot also have the benefit of a charitable deduction for remainder interests that are clearly indefinite in amount.

We are not holding today that it is impossible for a testator to leave a life estate with remainder to charity and still get a charitable deduction under pre-Tax Reform Act law. Indeed, the contrary is true. What we are saying is that deductions are matters of legislative grace and to qualify for them it is not unreasonable to expect taxpayers to insure that the amount given is readily calculable and sure to go to the charity involved.

The judgment of the District Court is reversed and the case is remanded with direction that the complaint be dismissed.