VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 23-CV-01682



In re Jennifer Pratt

<u>Decision on Pending Motions</u>

During their lives, Theodore "Jack" Green and Barbara Green were the owners of an automobile dealership in Rochester, Vermont, and they had two children: Joanne and Jennifer. Joanne worked in the family business, and Jennifer had a successful career of her own. After Barbara and Jack passed away in 2020 and 2021, two probate proceedings were initiated regarding their estate-planning choices—one involving Barbara's trust, and another involving Jack's estate. Both proceedings have been consolidated in this probate appeal, and presently before the court are four substantive questions.

*Question #1: Distribution of the Automobile-Dealership Properties*

The first question involves the distribution of property under Barbara's revocable trust. Barbara created the trust in February 2003, and in April 2003, Jack transferred into the trust two parcels of real estate that were used in connection with the automobile-dealership business. At issue is how those properties should be distributed.

The relevant provisions of the trust are as follows:

(1) tangible personal property should be distributed by agreement or in the discretion of the trustee;

(2) all of "[d]onor's interest in any real estate" held in the trust should be distributed to Joanne;

(3) "40% of the remainder" of the trust should be distributed to Joanne; and

(4) "60% of the remainder" of the trust should be distributed to Jennifer.

The plain language of these provisions appears to provide straightforwardly for Joanne to receive any real estate held by the trust along with 40% of the remainder, and for Jennifer to receive 60% of the remainder. See, e.g., *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 27; *VanSantvoord v. Henry W. Putnam Mem. Hosp.*, 125 Vt. 289, 293 (1965) (explaining, together, that the role of the court when

interpreting trust agreements is to discern the intent of the settlor by reading the plain language in the context of the whole agreement).

Likewise, the straightforward reading of the trust still makes sense even when the court considers "limited extrinsic evidence" of the "circumstances surrounding the making of the agreement," e.g., *Beldock*, 2023 VT 35, ¶ 28; *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 577–81 (1988). Joanne was the daughter who participated in the family automobile dealership, and the trust was funded with two parcels of real property that were used in connection with the family automobile dealership. It makes sense that the dispositive provisions of the trust would distribute to Joanne the real estate associated with the family automobile dealership along with a smaller percentage of the remainder of the trust, and that the trust would distribute to Jennifer an accordingly larger percentage of the remainder.

Jennifer, however, argues that the automobile-dealership properties are not "real estate" under the terms of the trust, but rather "personal property" that should be distributed under the provisions pertaining to the remainder of the estate. She argues first that her interpretation makes sense in retrospect because the trust was never funded with any other assets (though the daughters both received various other inheritances through other means). However, the relevant time for interpretation of the trust is not now, but rather the time when it was made. See *VanSantvoord*, 125 Vt. at 293 ("A trust deed takes effect when it is made and the construction that would be given to it at that time holds true throughout the life of the instrument."). Later events are not a basis for reading the trust in a manner contrary to its plain language.

Jennifer observes second that the trust's second distributive provision referred to the "[d]onor's interest in any real estate." Jennifer argues that this phrase does not refer to the automobile-dealership properties because those properties were owned in fee simple by the trust, and the donor therefore had no interest in them. Even considering the evidence in the light most favorable to Jennifer, however, the court does not view this interpretation as reasonable, for a number of reasons. See *Sutton v. Purzycki*, 2022 VT 56, ¶ 37 (explaining that an alternative interpretation must be "reasonable" in order to show an ambiguity in an otherwise-plain writing).

First, the trust was revocable. This means that the donor retained ultimate control over all of the trust property, and could have revoked the trust at any time. 14A V.S.A. § 603(a); Bogert's Law of Trusts and Trustees § 1061. As such, at the time the trust was written, the donor had substantial remaining interests in the trust property, and there was nothing contradictory or confusing about referring to the donor as having such an interest.

Second, the language regarding "the donor's interest" does not provide a material distinction relevant to this case. *VanSantvoord*, 125 Vt. at 293. No evidence has been offered to show that there was some real estate in which the donor had an interest, and some real estate in which the donor had no interest. A plain reading does not support the conclusion that Barbara and Jack intentionally wrote their distributive provisions to define "real estate" in a way that did not apply to their real estate. See Williston on Contracts § 32:9 (explaining that "[t]he law prefers an interpretation which gives effect to all parts of the contract rather than one which leaves part of the contract ineffective or meaningless"); *State v. Ben-Mont Corp.*, 163 Vt. 53, 60 (1994) (explaining, in the context of statutory interpretation, that courts should not endorse interpretations that "render[] a significant part" of the statute as meaningless). Nor is it necessary for the court to invent some meaning for the phrase that is relevant to

this case; other considerations (e.g., divorce, taxes) are involved in the creation of trust instruments. At a minimum, it does not appear that the settlors meant for the words to have dispositive significance at the time of drafting, and the court is therefore not inclined to read dispositive significance into the words, either.

Jennifer also argues that the automobile-dealership properties are not "real estate" but rather "personal property" because of the way Jack wrote the deed that transferred the properties into the trust. In pertinent part, he wrote that the properties were being conveyed to the trust "in fee simple," and that the trustees would have "full power and authority" to "sell" and "mortgage" and "lease" the properties. He also wrote that the interest of the beneficiaries in the property was limited to a "personal property" interest in "the earnings, avails and proceeds arising from the rental, sale or other disposition of the premises." He further wrote that the beneficiaries had no "right, title or interest, legal or equitable, in or to the premises."

A plain reading of this language is that it was meant to perform the function of a trust certificate, e.g., 14A V.S.A. § 1013. In other words, the language was meant to reassure potential creditors that the trustees had the full power to sell and mortgage the properties, and that the consent of the beneficiaries was not needed. See Bogert's Law of Trusts and Trustees § 741 (describing how issues of beneficiary consent may interrupt some proposed sales in the absence of clarifying language). It may have been that there were other ways of providing necessary information to potential creditors without having to provide them with the entire trust instrument, but the availability of other forms of certification does not mean that the inclusion of assurances in the deed must have meant something else.

Furthermore, there is no language in the deed suggesting that Jack intended any amendments to the distributive provisions of the trust. It is true that Jack wrote that the language of the trust deed was "affirm[ing]" and "supplement[ing]" the provisions of the trust, but those references regarded only the details that would have been important from the perspective of a potential creditor. Nothing in the deed made any references to the distribution of trust property. Nor does it make sense for Jack and Barbara to have hired attorneys to prepare a comprehensive estate plan in February 2003, and for Jack to have amended the estate plan two months later, in April 2003, through opaque references in a separate deed. Nothing about the deed indicates an intention to make dramatic amendments to the ultimate distribution of trust property.

A final consideration is that the proposed interpretation of the deed does not result in a complete distribution of trust property. If the interest of the beneficiaries was intended to be only "personal property" interests in the proceeds from the property, and the beneficiaries had no "right, title or interest, legal or equitable, in or to the premises," then the proposed interpretation does not explain who is to be the legal owner of the property upon final distribution of the trust. Given that the plain and straightforward reading of the trust provides for a complete distribution of trust property, it is not reasonable to entertain an interpretation that introduces a fatal error into the distributive provisions of the trust.

For these reasons, the court interprets the trust to mean what it says: Joanne should receive any real estate held by the trust along with 40% of the remainder, and Jennifer should receive 60% of the remainder.

*Question #2: Stock Claim*

The second question involves the distribution of Barbara's stock in the automobile dealership. The material allegations here are that, during the 2010s, the stock in the automobile dealership was held primarily by Jack, Barbara, and Joanne. By the end of the decade, however, Barbara's health was failing, and so (according to Joanne) Barbara gave her shares to Jack and Joanne in 2019.

Jennifer contends that this gift was not actually made at the time (her evidence being that stock certificates reflecting the transaction were not created until later in time, following the death of both parents). Jennifer also contends that, if any gift was indeed made in 2019, Barbara did not then have the mental capacity to make such a gift. For these reasons, Jennifer contends that the stock shares should have passed through Barbara's pourover will into the trust, and that the stock shares should be distributed under the remainder provisions of the trust.

Here, the procedural posture prevents the court from considering the claim. Jennifer's claim is fundamentally that the stock shares should have "pass[ed] through [Barbara's] estate" into the trust via the pourover will. See *In re Barbara Green Trust*, Docket No. 22-PR-01343, Petition (Vt. Super. Ct. Mar. 7, 2022); *In re Estate of Theodore Green, Jr*., Docket No. 21-PR-07041, Petition for Allowance of Claim of Jennifer G. Pratt (Vt. Super. Ct. June 7, 2022). But there was never a probate proceeding opened for Barbara's estate, and the present dockets do not involve Barbara's estate, either. Instead, the present proceedings involve the administration of Barbara's trust and the probate of Jack's estate. See, e.g., *In re Barbara Green Trust*, Docket No. 22-PR-01343; *In re Estate of Theodore Green, Jr.,* Docket No. 21-PR-07041. Although the trust-administration and estate-administration dockets present opportunities to raise claims regarding what existing funds should be included within the trust or within Jack's estate, neither docket presents an opportunity to reach backwards in time and litigate what funds should have been included within Barbara's estate. At this point, claims against Barbara's estate are time-barred. 14 V.S.A. § 1203(a). For these reasons, with respect to the stock claims, Jennifer has failed to state claims upon which relief can be granted.

*Question #3: Rent Claim*

The third question involves the collection of rent from the automobile-dealership properties. Here, the material allegations involve rental agreements between the automobile dealership and Barbara's trust over certain periods of time. The basic premise of the agreements was that the automobile dealership was supposed to pay rent every month to Barbara's trust. Jennifer claims that some of these amounts were never collected, and are essentially accounts receivable that should be collected either by the administrator of Jack's estate or the administrator of the trust, and distributed to Jennifer and Joanne under the terms of the trust. See *In re Barbara Green Trust*, Docket No. 22-PR-01343, Petition (Vt. Super. Ct. Mar. 7, 2022); *In re Estate of Theodore Green, Jr*., Docket No. 21-PR-07041, Petition for Allowance of Claim of Jennifer G. Pratt ¶¶ 69–97 (Vt. Super. Ct. June 7, 2022).

Defendants seek dismissal of the rent claims for failure to state a claim upon which relief can be granted. At the motion hearing, however, defendants' reasons for why the claim should be dismissed were factual in nature. A motion to dismiss is not the time or place for factual determinations, nor an opportunity to "resolv[e] a contest between the parties about the facts or substantive merits of the plaintiff's case." 5B Wright & Miller, Federal Practice and Procedure: Civil

3d § 1356; *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶¶ 13–14, 184 Vt. 1; *Bock v. Gold*, 2008 VT 81, ¶ 8, 184 Vt. 575 (mem.). A claim regarding what existing funds should be included within the trust or within the estate are exactly the kinds of claims that can be raised in trust and estate proceedings. For this reason, the rent claims are claims upon which relief can theoretically be granted. Any determinations regarding whether the claims have merit must await either a summary-judgment motion or a merits hearing.

*Question #4: In Terrorem Clause*

The fourth question involves whether judgment should be granted to defendants because the trust and will both include "in terrorem" clauses, meaning provisions in the document that provide for the disinheritance of a beneficiary who challenges a will or trust. See, e.g., *Slosberg v. Giller*, 876 S.E.2d 228, 233–38 (Ga. 2022) (explaining the nature of the clauses in general terms). In this case, the specific language of the in terrorem clause is as follows:

> If any person for any reason or in any manner, directly or indirectly, contests this trust in whole or in part on any ground whatever, or opposes or objects to any of the provisions hereof, or seeks to invalidate any such provision, or seeks to succeed to donor's estate or any part thereof otherwise than through this trust, then such person shall neither take nor receive anything from the trust estate, and any gift or other interest in the trust estate to which such person would otherwise be entitled by virtue of the provisions of this trust shall be revoked and be canceled and rendered void and of no effect whatever.

At issue is the enforceability of the provision. No prior Vermont precedents regarding in terrorem provisions have been provided to the court. A wide split of authority exists in other states. See generally Beyer, Dickinson & Wake, *The Fine Art of Intimidating Disgruntled Beneficiaries with In Terrorem Clauses*, 51 SMU L. Rev. 225 (1998) (discussing the history of in terrorem provisions and modern approaches to enforcement).

A common thread throughout the jurisprudence, however, recognizes that "in terrorem" or exculpatory clauses should not be interpreted as protecting trustees from beneficiary claims regarding trust administration. The approach of the American Law Institute is that an exculpatory provision in a trust instrument "is not effective to relieve the trustee of liability for breach of trust committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary, or of liability for any profit which the trustee has derived from a breach of trust." Restatement (Second) of Trusts § 222; see also Restatement (Third) of Property (Wills & Donative Transfers) § 8.5 cmt. a (explaining that clauses that "purport[] to prohibit beneficiaries from enforcing fiduciary duties owed to the beneficiaries by trustees" are not within the scope of the permissible no-contest clauses recognized by the ALI). In other words, the idea is that an exculpatory clause should not become an "instrument of defense in the hands of a faithless or negligent fiduciary." Beyer et al, *supra*, 51 SMU L. Rev. at 244 (internal quotation omitted). Here, because the rent claim is a claim that the trust administrator has failed to collect rents owed to the trust, and a claim that the estate administrator has failed to collect rents owed to the estate, the court follows the two Restatement sections above, and does not construe the no-contest clause as effective under the circumstances.

*Endnotes*

Several additional comments are necessary. First, in reaching its conclusion regarding the distribution of the automobile-dealership properties, the court did not rely upon the doctrine of reformation. It is not clear whether the probate division relied upon the doctrine, either, but certain references in the probate division's opinion created considerable argument between the parties. Here, the court's analysis was interpretive in nature.

Second, in preparing its decision, the court did not address all of the arguments made by the parties, nor all of the facts asserted by the parties. An example is that Jennifer argued that her interpretation regarding the distribution of the automobile-dealership properties was supported by the inclusion of the plural term "trust agreements" in the April 2003 deed. In other words, Jennifer's argument was that because the deed used the plural term, the court should conclude that there were multiple trust agreements, and that the deed must be one of those agreements, and thus the deed should be construed as creating a new trust or amending the existing trust. Given all of the other considerations described in this opinion—including that Jack and Barbara both created trusts in February 2003, and so there were already multiple trust agreements at the time the deed was written— the court declined to find dispositive significance in the use of a plural, especially where the deed did not otherwise describe itself in those terms, and where a plain and straightforward reading of the relevant documents did not support the proposed interpretation. To the extent that additional arguments were made by the parties but not further addressed herein, the court did not find the arguments to be persuasive. And to the extent that additional facts were argued by the parties, the court did not find them to be material.

Third, the court's opinion represents a number of determinations made on a variety of motions. The issue regarding the distribution of the automobile-dealership properties was the subject of cross-motions for summary judgment filed by defendant Joanne Mills (MPR#2) and plaintiff Jennifer Pratt (MPR#3). In resolving these motions, the court evaluated each party's motion "on an individual and separate basis" and determined "for each side" whether the moving party demonstrated that there were no genuine issues of material facts and that they were entitled to judgment as a matter of law. 10A Wright & Miller, Federal Practice and Procedure: Civil 3d § 2720; *Price v. Leland*, 149 Vt. 518, 521 (1988). On each motion, the non-moving party was given the benefit of all reasonable doubts and inferences. *Beldock*, 2023 VT 35, ¶ 21; *Price*, 149 Vt. at 521. The court's conclusion was that the trust agreement was unambiguous and that the plain language controlled as a matter of law. *Beldock*, 2023 VT 35, ¶ 27.

Fourth, the Estate of Theodore Green also filed a motion for summary judgment regarding the distribution of the automobile-dealership properties. However, that issue was not presented in the docket regarding the administration of Jack's estate. See *In re Estate of Theodore Green, Jr.*, Docket No. 21-PR-07041, Petition for Allowance of Claim of Jennifer G. Pratt (Vt. Super. Ct. June 7, 2022). For that reason, and in light of the disposition of the cross-motions between the parties to the trust proceeding, the estate's motion is denied as moot.

Finally, the rent claim and stock claim were raised in the context of motions to dismiss for failure to state a claim upon which relief can be granted. The procedural standards applicable to those motions were addressed above.

## Orders

Defendant Joanne Mills' Motion for Partial Summary Judgment (Motion #2), filed August 15, 2023, is granted;

Plaintiff Jennifer Pratt's Cross-Motion for Summary Judgment (Motion #3), filed September 13, 2023, is denied;

Defendant Estate of Theodore Green's Motion for Partial Summary Judgment (Motion #4), filed September 14, 2023, is denied as moot;

Defendant Estate of Theodore Green's Motion for Summary Judgment Related to Barb's Trust Disinheritance Provision (Motion #5), filed September 14, 2023, is denied;

Defendant Estate of Theodore Green's Motion to Dismiss (Motion #6), filed September 14, 2023, is granted as to the stock claim and denied as to the rent claims.

It is not clear to the court whether any discovery is needed on the rent claims. The parties shall file a scheduling order that provides for any discovery and that also establishes a deadline for the filing of any dispositive motions with respect to the rent claims, along with a trial-ready date in the event that no dispositive motions are filed. A scheduling order shall be filed within 30 days of the file-stamped date of this order. If no stipulated order is filed by then, the court will set the schedule, taking into consideration any competing submissions by the parties.

Electronically signed on Monday, April 29, 2024 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 04/29/24
Windsor Unit